[Civ. No. 18505. First Dist., Div. One. Apr. 28, 1960.]

FRED WRIGHT, JR., et al., Appellants, v. ANNA BUZZINE et al., Respondents.

*Assigned by Chairman of Judicial Council.

Ben K. Lerer and Charles O. Morgan, Jr., for Appellants.

Bagshaw, Schaal, Martinelli & Talley, A. E. Bagshaw, Thomas E. Schaal and William G. Corrigan for Respondents.

TOBRINER, J.—The superior court, after a jury trial, rendered judgment against appellant real estate brokers' claim for commissions in the amount of $50,000, arising from an exchange of ranch properties, which was induced by the buyer's fraudulent misrepresentations. The court instructed the jury that even if the brokers acted in good faith, the buyer's misrepresentations precluded their recovery. As we shall point out, we do not believe that the brokers earned their commissions by securing a buyer who induced the acceptance of the transaction by fraud, and we uphold the instruction. Nor do we find grounds for reversal in appellants' contentions of: (1) an alleged presence of ''uncontradicted documentary and oral evidence showing both a waiver and ratification of the alleged fraud'' by respondents; or (2) the court's refusal to give appellants' requested instructions as to riparian rights of the buyer's property, such property constituting part payment for respondents' land.

Respondents commissioned the appellants, licensed real estate brokers, to procure a buyer for respondents' ranch. On April 2, 1956, John Stegge inquired from appellant broker, Wright, about the possibilities of trading Stegge's Pope Valley Ranch for respondents' Black Point Y Ranch. The next day Wright relayed this information to respondent Buzzine and also arranged for him to view the Pope Valley Ranch. On April 4 the parties and John Stegge met at respondents' ranch and from there they proceeded to the Pope Valley property. Upon arriving at this location they inspected the ranch, including a dam which Stegge stated he had built. Buzzine testified that at the dam Stegge told him that its capacity was 1,550 acre feet and that it extended back into the canyon. He further testified that both appellants and Stegge stated the lake was 1¾ miles long. Though Buzzine did not know what ''acre foot'' meant, he started to walk up the hill in order that he might see the reservoir. Stegge, however, called him back, pleading a business appointment as an excuse for his hurry.

From the dam the party went a quarter of a mile to a creek. The creek was approximately 250 feet wide; the water, 3 to 3½ feet deep. Stegge described the 40 horsepower hydraulic

pump which was there, representing its purpose to be the boosting of the creek water to the dam, or the pumping of water to irrigate "any part of the ranch." Stegge, calling the creek "Putah Creek," stated that it would run all summer and that Buzzine did not have to figure on the dam " '. . . unless there is [an] extreme dry year . . . it will take care of the whole ranch . . .' . . . ."

At midnight of this day, April 4, 1956, Buzzine signed the "exchange agreement" whereby he agreed to trade his ranch for the Pope Valley Ranch plus $200,000. The escrow agreement on this transaction was to be closed on August 4, 1956. In the latter part of May, however, Buzzine went to the dam site and found a dry canyon in place of the supposed lake. The record does not disclose whether it was during July or August that Buzzine also discovered the so-called "Putah Creek" not to be Putah Creek and to be dry. Upon finding the Pope Valley property not a "wet" but a "dry" ranch, Buzzine refused to perform on the contract.

 We turn, first, to the crucial question of the propriety of the instruction,[1] which stated that even though the jury found that the brokers did not participate in the fraud, the brokers should not recover if the jury determined that the buyer induced the sellers to enter into the exchange agreement by false representations.

While the broker earns his commission when he procures a customer who is able, ready and willing to buy the property upon the terms, conditions and price fixed by the owner (*Edwards* v. *Billow* (1948), 31 Cal.2d 350 [188 P.2d 748]; *Ridgway* v. *Chase* (1954), 122 Cal.App.2d 840 [265 P.2d 603]; *Rylee* v. *De Fini* (1955), 134 Cal.App.2d Supp. 877 [285 P.2d 115]) the buyer did not in reality fulfill those terms here. Instead of a "wet" ranch respondents would have obtained a "dry" ranch which was represented to be "wet." The brokers did not procure a bona fide buyer, ready, able and willing to meet the sellers' terms; they produced a deceptive buyer who did not meet the sellers' terms. In substance the brokers, then, failed to obtain the kind of buyer called for by

---

[1] "Moreover, if from the evidence you should find that the principal, Stegge Built Homes and Stegge Development Company, procured by these [appellants] . . . induced these [respondents] . . . by false representations to enter into the exchange agreement in issue, then the [appellants] . . . are not entitled to recover commissions from the [respondents]. . . . This is so even though you may believe that the [appellants] . . . acted honestly and in good faith and were not a party to the fraud operated on the [respondents]. . . ."

their contract of employment and prerequisite to the payment of the commission.

It is true, as appellants argue, that "when a vendor accepts a buyer procured by the broker, he is later estopped from denying the buyer's ability or willingness to complete the contract." (*Edwards* v. *Billow, supra* (1948), 31 Cal.2d 350.) But acceptance, induced by fraud, is not a binding and irretrievable acceptance; it is of a different nature than acceptance which is withdrawn for unjustifiable or arbitrary causes, such as a subsequent refusal of the principal to complete the transaction. (See *Herz* v. *Clarks Market* (1960), 179 Cal.App.2d 471 [3 Cal.Rptr. 844].)

Because of these reasons, as we shall point out, many courts, the Restatement and the annotators hold the broker does not earn his commission when the buyer induces the seller to enter into the transaction by fraud.

While no California case makes such a precise holding, some California courts have indicated in dicta that the fraud of a buyer might bar the broker from collection of his commission. Thus, in holding the principal liable for the broker's commission upon his production of a ready, willing and able buyer, Justice Moore in *Beazell* v. *Kane* (1954), 127 Cal. App.2d 593, 595 [274 P.2d 224], points out: "Appellant contends there is no proof that the Gelbers were ready, willing and able to purchase the property on the prescribed terms. He is in no position to urge such contention. Having accepted the buyers procured by his broker, he is estopped to deny their ability or willingness to complete the contract, *in the absence of the exercise of fraud or other oppression to prevent him from satisfying himself in relation to the matter.* (*Edwards* v. *Billow,* 31 Cal.2d 350, 360 [188 P.2d 748]; *Spalding* v. *Bennett,* 93 Cal.App. 577, 583 [269 P. 948].)" (Italics added.) In a case involving alleged fraud of the broker, the court in *Cutler* v. *Bowen* (1935), 10 Cal.App.2d 31, 36-37 [51 P.2d 164], said: "If the suit is by the broker or agent to recover a commission and the entire transaction has been so tainted with fraud that there is a failure of consideration then the courts may deny any recovery."

In *K. Lundeen Corp.* v. *Barlow* (1932), 120 Cal.App. 391 [7 P.2d 1102], the court refused the broker his commission, otherwise due, in an exchange transaction which the defendant had previously rescinded because of the fraud of the party procured by the plaintiff broker. The court relied upon the concurrence of the provisions for the exchange and for the

broker's commission in a single document, reasoning that the rescission of the contract necessarily liquidated any agreement for payment of the commission. In the instant case the parties entered into separate agreements as to the exchange and the employment of the brokers. Yet the splitting of the agreement for the commission and the principal contract into two instruments should not make the commission payable if it is not payable when the two provisions are incorporated into one document. The substance of the transaction remains the same; the underlying transaction collapses for fraud in both instances; the form of the documents should not change the result.

The principles which we believe applicable find expression in the Massachusetts case of *McCarthy* v. *Reid* (1921), 237 Mass. 371 [129 N.E. 675, 12 A.L.R. 1000]. This was an "action to recover a broker's commission upon an exchange of real estate." (129 N.E., p. 676.) The customer, with whom the " '. . . defendants made a written agreement to exchange . . .' " misrepresented the " '. . . amount of rents received by him from his real estate. . . .' " (*Idem.*) The court held: "The plaintiff procured a customer who induced the defendants by false representations to enter into an agreement for the exchange of lands, which the defendants repudiated and refused to carry out when they learned of the fraud. . . . Although the plaintiff acted in good faith and was not a party to the fraud, he is not entitled to a commission as he failed to accomplish what he was employed to do; he did not procure a customer who was able, ready and willing to exchange his property for that of the defendants on terms acceptable to the latter." (*Idem.*) To the same effect: *Duke* v. *Graham* (1913), 163 Iowa 272 [143 N.W. 817]; *Webb* v. *Durett,* (Tex. Civ. App., 1911) 136 S.W. 1189.

While appellant cites *Deweese* v. *Brown* (1913), 55 Colo. 430 [135 P. 800], and *Lockwood* v. *Halsey* (1889), 41 Kan. 166 [21 P. 98], for the contrary position, these cases are not persuasive. As to the first, the annotator in 12 A.L.R., *supra,* 1000, 1003, points out, "It will be observed that the court, in the reported case (McCarthy v. Reid, *ante,* 1000), refuses to follow this decision, and it seems correctly so, where the contract has actually been rescinded for misrepresentation or fraud." As to the early Kansas case, the court there rests primarily on the point that the real estate broker is not an insurer of the title of a piece of exchanged property, and in the absence of the broker's fraud, the broker

should receive his commission. When "the transaction is completed . . . he has fully earned his commission, although afterward it may turn out that there is a defect in the title and quality or condition of the land." (P. 170.)

Appellants attempt to distinguish the cited cases by emphasizing the following statement in *Caine* v. *Briscoe* (1926), 78 Cal.App. 660, 670 [248 P. 774], "Consequently his [the employer's] acceptance should estop him from alleging anything against the claim except fraud on the part of the broker in inducing the acceptance." Since the case did not involve any fraud of the customer, the statement is at best dicta, and it is further modified by the previous observation of the court, "There was and is no claim made by defendant that he was induced to accept the offer of the buyers to purchase the properties by any act of fraud on the part of the plaintiff or that such acceptance was brought about through a mutual mistake regarding the facts or the terms of the offer." (P. 670.)

The Restatement is explicit in positing the rule : "b. *Fraud by broker's customer*. The broker is not entitled to compensation if the customer is guilty of such fraud or misrepresentation as makes the transaction voidable. Thus, if the customer misrepresents his assets, or does not intend to perform the contract entered into, or falsely represents that he is not representing a person with whom the principal would not deal, the agreement is voidable by the seller." (Rest., Second, Agency, § 445.)

We must conclude that respondents should not bear the loss which flows from the buyer's fraud, particularly here in a situation in which appellants were also the agents of the buyer. In substance the whole transaction collapsed because of fraudulent representations, in which, it is true, the brokers did not participate. But the fraudulent essence of the transaction blemishes that which emanates from it; the fruits of the transaction cannot become wholesome when served at the brokers' table. The brokers should not benefit from their production of the fraudulent buyer : such a buyer does not fulfill the purport or object of their employment.

■ Appellants' contention that respondents' cross-complaint for specific performance in the damage suit of Stegge Built Homes and Stegge Development Company against respondents must compose a waiver of fraud, as well as a ratification of the contract, succumbs to an analysis of the facts and the law.

The belabored cross-complaint apparently alleges respondents are willing to perform, and that the buyer be required to perform, that part of the agreement relating to the eastern portion of respondents' property. The exchange agreement itself stated the "full price" of respondents' Black Point Y Ranch to be $500,000 and provides that Stegge Built Homes "exchange its property for that portion of first party's [respondents'] land lying between the railroad and Highway 101" and that "Stegge Development Co." is "to buy the balance" of respondents' land "lying on the other side [the easterly side] of the railroad for $200,000." (The cross-complaint alleges "the entire purchase price" to be "Two Thousand ($2,000.00) Dollars" but this must be in error.) Apparently, the agreement was rewritten and initialed to provide for the one corporation to pay the entire $200,000; to the court's question, "Did Mr. Stegge do some initialing on that piece of paper?" appellant Wright replied, "Yes, Your Honor. Because he paid the same amount of difference, but he had a different way of writing it up so it would go through two different corporations." The record discloses that the parties themselves refer to this document as one agreement.

Appellants contend that the cross-complaint in the other action is an affirmation of a severable portion of the agreement, and that respondents by filing it assumed the obligation of the commission. But the issue of severability of the exchange agreement remained unresolved in that case. The Stegge corporations denied all the allegations of the cross-complaint except the extension of the agreement. The court did not decide the issue because the parties reached a settlement of the controversy and filed mutual dismissals with prejudice. To hold respondents bound to their characterization of the contract, even though it is under oath, would be to hold them to conclusionary and contestable pleadings as to the nature of an instrument, which neither binds the pleader nor the court. (*Kidwell* v. *Ketler* (1905), 146 Cal. 12, 17 [79 P. 514] ; *Producers Fruit Co.* v. *Goddard* (1925), 75 Cal.App. 737, 757 [243 P. 686].)

We believe it would be a harsh rule which turned conclusionary and controverted pleadings in a contested case between the principals into a waiver of fraud in another case for the benefit of the brokers. We cannot overlook the exigencies of the courtroom contest, which, here, produced an answer by respondents denying the allegations of the complaint, an affirmative defense of fraud and a cross-complaint; and we do

not transform the last pleading maneuver into an ironclad waiver of fraud as a matter of law.

We see no error in the trial court's submission of the question of ratification to the jury as a factual issue. The court specifically instructed the jury that respondents' attempt to secure specific performance "of the exchange agreement or any part thereof . . . may be considered . . . as evidence of the Defendant's intention to waive the alleged fraudulent misrepresentations." The court permitted the filing of the cross-complaint to be weighed by the jury as one factor, in the totality of factors in the case, to ascertain the intent of the sellers. The jury found, however, that the sellers did not intend to waive the fraud.

Appellants' third ground for reversal lies in the trial court's refusal to give a requested instruction on riparian rights. Appellants contend that, assuming an insufficient amount of water could be stored in the dam for irrigation, other water could be used for that purpose "under the law of riparian ownership."[2] To that end appellants proposed the following instructions: "I further instruct you that, as a matter of law, a riparian owner has a right to a reasonable use of the water on his land for the purpose of irrigation. I further instruct you that such right would allow the use of water from the stream running through or adjacent to the Stegge ranch for the purpose of irrigating them." We find no error in the refusal of the instruction.

In the first place, the implied finding of fact by the jury that the buyer misrepresented the amount of water available for storage at the dam constituted in itself a finding of a material misrepresentation. Assuming the possibility of other potential sources of water, respondents would still have the right to rescind. The issue of riparian rights being immaterial under such circumstances, the court properly rejected the instruction. (*Stevens* v. *San Francisco & N. P. R.* (1893),

---

[2]At the trial Lawrence Spencer, a supervising hydraulic engineer for the State Water Rights Board, who supervised that section of the board which handles water right applications, permits and licenses, testified that the extent of the Pope Valley's appropriated water rights, granted by the board, constitutes 75 acre feet collectible between October 1 and July 1 of each year. The water is to be stored in the dam and utilized on a particular 30 acres. No permit exists for any right to draw water from Pope Creek for storage in the dam. Under cross-examination appellants' attorney inquired of Spencer: "Anyway . . . there is nothing in your file to indicate that your office has taken the position that there are no such riparian rights?" Spencer responded, "We have taken no position in the matter either way."

100 Cal. 554 [35 P. 165] ; *Gately* v. *Campbell* (1899), 124 Cal. 520 [57 P. 567].)

In the second place, the instruction was not responsive to the evidence in that the showing did not sufficiently establish the alleged riparian rights. That the instruction must rest upon the evidence and issues presented is axiomatic. (*People* v. *Garcia* (1959), 174 Cal.App.2d 525, 531-532 [344 P.2d 855] ; *People* v. *Geibel* (1949), 93 Cal.App.2d 147, 148 [208 P.2d 743].) Appellants here did not introduce evidence sufficient to establish the riparian rights of the Stegge ranch. While appellants adduced testimony that Pope Creek "appears to cross at least a portion" of the Stegge ranch and that some unnamed stream also runs through the property, such a showing does not establish *what portion* of the Stegge property enjoyed riparian rights. As the Supreme Court stated in *Rancho Santa Margarita* v. *Vail* (1938), 11 Cal.2d 501, 528-529 [81 P.2d 533], ''[T]he extent of lands having riparian status is determined by 3 criteria: 1. The land in question must be contiguous to or about [*sic*] on the stream. . . . 2. The riparian right extends only to the smallest tract held under one title in the chain of title leading to the present owner. . . . 3. The land, in order to be riparian, must be within the watershed of the stream. . . . '' No evidence appears to meet the second and third requirements; the court therefore properly refused appellants' requested instruction.

We conclude that the innocent seller should not be subject to the payment of brokerage commissions, in this case in the sum of $50,000, when the brokers produce a buyer who by fraud induces the sellers' acceptance. Such a buyer is not the ready, willing and able buyer contemplated by the decisions. Nor should the sellers' filing of a conclusionary and contestable cross-complaint seeking specific performance as to part of the transaction in another action serve as a waiver of the fraud here.

We affirm the judgment.

Bray, P. J., and Duniway, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 22, 1960.