James E. MEADOWS et al.,
Petitioners,

v.

Roy W. BIERSCHWALE et al.,
Respondents.

No. B–4127.

Supreme Court of Texas.

Oct. 9, 1974.

Rehearing Denied Dec. 18, 1974.

Vinson, Elkins, Searls, Connaly & Smith, James Greenwood, III, James R. Tucker, Jamail & Gano, John Gano, T. D. Smith, Houston, for petitioners.

Schlanger, Cook & Cohn, Joel W. Cook, Butler, Binion, Rice, Cook & Knapp, Jonathan Day, Houston, for respondents.

SAM D. JOHNSON, Justice.

Roy W. Bierschwale, Weldon E. Countryman and Eli David Philley (hereinafter referred to collectively as Bierschwale) filed suit against Herbert C. Oakes and United Properties, Inc. (hereinafter referred to as Oakes) to rescind a transaction whereby Bierschwale sold an apartment complex to Oakes in return for fifty-nine promissory notes payable to Oakes and executed by James H. Shoffner, William E. Goyen, Jr. and Louis R. Davis (the Black Hardware notes). The facts are detailed in the court of civil appeals opinion and will be restated here only insofar as is necessary to clarify the issues before this court.

Oakes transferred the apartment complex to United Properties, Inc., a corporation wholly owned by Oakes, and United Properties in turn transferred the property to Eugene J. Goldman, a bona fide purchaser. The consideration for the Goldman transfer was $40,000 in cash plus twenty-four notes; twenty-three in the principal amount of $4,000 and a final note in the principal amount of $1,879.10 (the Goldman notes).

James E. Meadows, a real estate broker, and Continental Mortgage and Realty of Houston, Inc., a corporation owned by Meadows (hereinafter referred to as Meadows), were responsible for bringing Oakes and Bierschwale together. Meadows represented Bierschwale, the seller, in the transaction. At Bierschwale's request, Oakes transferred twelve of the fifty-nine notes due Bierschwale to Meadows. This transfer was made pursuant to an agreement between Bierschwale and Meadows

that Meadows would accept the notes, rather than cash, as his sales commission.

Only two payments on the fifty-nine Black Hardware notes were made. The history of these notes is traced in detail in the court of civil appeals opinion. For our purposes it is sufficient to say that the Black Hardware notes were worthless.

Bierschwale filed this suit on August 15, 1967, seeking to rescind the original transaction and to impress a constructive trust on the proceeds of the Goldman sale. Meadows intervened. Bierschwale and Meadows alleged that Oakes made material misrepresentations concerning the Black Hardware notes. On March 4, 1968 Oakes pledged numbers one through seven of the Goldman notes to Joe E. Counts, Marion E. Ford, Milford Frnka and T. D. Smith, Trustee, (hereinafter referred to as Smith) as security for a prior obligation. It is undisputed that Smith is a holder in due course. On May 27, 1968 the trial court ordered Goldman to make all future payments on the notes into the registry of the court. On June 1, 1970 Oakes defaulted on his prior obligation to Smith.

The trial court, after disregarding certain issues, entered judgment on the verdict and, on the basis of Oakes' fraud, rescinded the transaction, gave Meadows a judgment in the sum of $23,280 against Oakes, and awarded Bierschwale and Meadows a constructive trust on the proceeds of the Goldman sale. In addition, the trial court gave Bierschwale a cash judgment equal to the amount of the cash proceeds from the Goldman sale. *All* of the proceeds from notes one through seven were awarded to Smith. On appeal to the court of civil appeals the fraud judgment against Oakes was affirmed, Meadows' re-

covery was reduced from $23,280 to $14,260, and Meadows was denied a share in the constructive trust res.[1] That court also limited Smith's award to the proceeds which had accumulated subsequent to June 1, 1970; all payments made prior to June 1 were awarded to Bierschwale. 497 S.W.2d 506.

Oakes, Meadows and Smith have all appealed from the judgment of the court of civil appeals and in the interest of clarity their arguments will be discussed separately.

## APPEAL OF OAKES

Oakes' first contention is that a constructive trust requiring the defendant to account for profits is an appropriate remedy only when breach of a fiduciary relationship is involved. This is clearly erroneous. "[T]he circumstances which give rise to a constructive trust may or may not involve a fiduciary relationship." Restatement of Restitution § 160, Comment *a* at 641. It is not essential for the application of the constructive trust doctrine that a fiduciary relationship exist between the wrongdoer and the beneficial owner. Actual fraud, as well as breach of a confidential relationship, justifies the imposition of a constructive trust. Thigpen v. Locke, 363 S.W.2d 247 (Tex.1962); Fitz-Gerald v. Hull, 150 Tex. 39, 237 S.W.2d 256 (1951); Pope v. Garrett, 147 Tex. 18, 211 S.W.2d 559 (1948); Mills v. Gray, 147 Tex. 33, 210 S.W.2d 985 (1948); Miller v. Huebner, 474 S.W.2d 587 (Tex.Civ.App.—Houston [14th Dist.] 1971, writ ref'd n. r. e.).

Some confusion may have arisen from the following language in this court's

1. The court of civil appeals correctly limited the constructive trust res to the Goldman notes, the only identifiable property remaining from the proceeds of Oakes' sale to Goldman. Bierschwale was also awarded a cash judgment equal to the difference between the value of the Goldman notes and the total consideration Goldman paid to Oakes in return for the apartment complex. The court of civil appeals deducted the amount of Meadows' recovery against Oakes from the cash portion of Bierschwale's judgment.

opinion in Consolidated Gas & Equipment Co. v. Thompson, 405 S.W.2d 333, 336 (Tex.1966):

"Our holdings above cited are to the effect that for a constructive trust to arise there must be a fiduciary relationship before, and apart from, the agreement made the basis of the suit. Such is our holding here. As stated, the fact that one businessman trusts another, and relies upon his promise to carry out a contract, does not create a constructive trust. To hold otherwise would render the Statute of Frauds meaningless."

This language must be viewed in the context of the fact situation that gave rise to it. *Thompson* was a suit to enforce an oral agreement to execute an assignment of an overriding royalty on an oil and gas lease. No actual fraud was pleaded or proved. This court has imposed stringent prerequisites to the enforcement of oral agreements like the one in *Thompson* to avoid abrogating the Statute of Frauds and the Texas Trust Act.[2] Similar considerations do not exist in the instant case since it is a suit for rescission because of fraud, not an attempt to enforce an oral agreement to convey property.

Bearing in mind that Oakes procured the apartment complex from Bierschwale by fraud, Bierschwale would have, but for the sale to Goldman, been entitled to the imposition of a constructive trust on the apartment complex. It follows that Bierschwale is entitled to a constructive trust on the *proceeds* of the sale of the apartment complex to Goldman; these proceeds include any profit Oakes made on the sale to Goldman. Fidelity & Deposit Co. of Maryland v. Wiseman, 103 Tex. 286, 124 S.W. 621 (1910); Alexander v. Harris, 254 S.W. 146 (Tex.Civ.App.—Fort Worth 1923, writ ref'd); Smith v. Green, 243 S.W. 1006 (Tex.Civ.App.—Amarillo 1922, writ ref'd); Restatement of Restitution §§ 160, 202. Re-

statement of Restitution, Section 202, at 818, deals with the imposition of a constructive trust on the proceeds from the disposition of property wrongfully acquired and states:

"Where a person wrongfully disposes of property of another knowing that the disposition is wrongful and acquires in exchange other property, the other is entitled at his option to enforce either

"(a) a constructive trust of the property so acquired, or

"(b) an equitable lien upon it to secure his claim for reimbursement from the wrongdoer."

The Restatement also speaks to the recovery of profits:

Section 1, Comment *e* at 14:

". . . where a person with knowledge of the facts wrongfully disposes of the property of another and makes a profit thereby, he is accountable for the profit and not merely for the value of the property of the other with which he wrongfully dealt."

Section 160, Comment *d* at 644:

". . . where the defendant makes a profit through the consciously wrongful disposition of the plaintiff's property, he can be compelled to surrender the profit to the plaintiff and not merely to restore to the plaintiff his property or its value."

▪ Oakes next argues that any constructive trust which is imposed should be limited to specifically traceable property and that Bierschwale is not entitled to a money judgment equal to the balance of the proceeds from the Goldman sale. We agree that a constructive trust on unidentifiable cash proceeds is inappropriate. Even so, the award of a cash judgment to fully compensate Bierschwale is within the equitable powers of the court. *See* Re-

---

2. *See* Tyra v. Woodson, 495 S.W.2d 211 (Tex. 1973), for a recent statement of this court's view of the policy considerations involved in enforcing an oral agreement to convey land.

statement of Restitution § 160, Comment *d* at 644.

Several points brought forward by Oakes deal with the Texas Securities Act. Section C of Article 581–5, Vernon's Texas Revised Civil Statutes Annotated, provides an exemption from the Act if, among other things, the "sales are isolated transactions not made in the course of repeated and successive transactions of a like character; . . . ." The jury failed to find that the transfer of the notes was an isolated transaction not made in the course of repeated transactions of a like character. Oakes contends there was no evidence of probative force to support the submission of this issue. In addition, Oakes takes issue with the court of civil appeals' analysis of Article 581–33A of the Act. Section 33A states that the seller "is liable to the person buying the security from him, who may sue either at law or in equity to recover the consideration paid . . . ." Oakes argues that damages are limited by Section 33A to the value of the consideration Bierschwale gave for the Black Hardware notes and does not include any profit that Oakes made on the subsequent transfer of the apartment complex to Goldman. Since the fraud findings of the jury fully justify awarding the proceeds of the Goldman sale to Bierschwale, this court specifically declines to rule on Oakes' points dealing with the Texas Securities Act.

■ When the case was submitted to the jury an instruction defining the term "plaintiff" to include both Bierschwale and Meadows was included in the charge. Neither Oakes nor Bierschwale objected to this instruction. As a result, the jury's fraud findings are postured to favor Meadows as well as Bierschwale. Oakes attacks these findings on the grounds that an agent is not entitled to rely on statements made to the agent in his representative capacity. Oakes points out that in any event there is no pleading, no evidence and no jury issue on whether Oakes made representations to Meadows to induce action on Meadows' part. There is authority for the proposition that a person making a representation is only accountable for its truth to the person or persons he seeks to influence. *See* Westcliff Co. v. Wall, 153 Tex. 271, 267 S.W.2d 544 (1954); Williamson v. Patterson, 106 S.W.2d 753 (Tex.Civ.App. —Eastland 1937, writ dism'd). Oakes points out that he was not obligated to Meadows in any way; that Meadows was Bierschwale's agent in the transaction. However valid Oakes' argument may be, error was not preserved on this issue in Oakes' motion for new trial as required by Rule 374, Texas Rules of Civil Procedure.

■ Oakes further argues that the jury's findings on fraud do not support the trial court's judgment. The jury found that Oakes transferred the notes to the plaintiffs by means of an untrue statement or statements of a material fact or facts; that the plaintiffs did not know the statements were untrue; that the plaintiffs relied on the untrue statements. The jury also found that the plaintiffs in the exercise of reasonable care could have known all such statements were untrue. The jury further found that Oakes "omitted to state a fact or facts which would make the statements made by him not misleading," but that the "Plaintiffs knew of such omission to state such fact or facts." The court of civil appeals places the proper interpretation on these jury findings and appropriately construes them to sustain a judgment on the basis of fraud. The court of civil appeals also correctly found harmless error in the admission of certain evidence complained of by Oakes. All other points asserted by Oakes are overruled.

## APPEAL OF MEADOWS

The trial court gave judgment against Oakes to Meadows which attached to the trust res.[3] The court of civil appeals sustained Meadows' judgment but reduced the

3. *See* note 1.

amount thereof. In addition, the court of civil appeals opinion made Meadows' judgment inapplicable to the trust res. The court of civil appeals allowed Meadows only a money judgment and subtracted the amount thereof from the money judgment awarded Bierschwale.[4]

Meadows contends that the judgment of the court of civil appeals is erroneous in two respects: (1) the judgment deprived Meadows of a share of the constructive trust res; and (2) the judgment reduced Meadows' damages from $23,280 to $14,260. Meadows received twelve of the fifty-nine Black Hardware notes in lieu of a cash commission and now claims the same fraction of the trust res as his twelve notes bear to the total of the notes. For the reason to be hereafter stated, we determine that the judgment in the sum of $23,280 favoring Meadows should not have been reduced by the court of civil appeals. Further, we agree that Meadows should share in the trust res.

In opposition to the judgment in favor of Meadows, Bierschwale first complains that a broker is not entitled to a commission on a sale rescinded because of fraud. A majority of jurisdictions have adopted such a rule. *See* Wright v. Buzzine, 180 Cal.App.2d 426, 4 Cal.Rptr. 482, 79 A.L.R. 2d 1047 (1960); Restatement of Agency 2d § 445, Comment *g* at 351. *See also* Webb v. Durrett, 136 S.W. 1189 (Tex.Civ.App. 1911). However, error was not preserved on this point. The effect of this omission is to waive the finding that Meadows was entitled to a commission on the sale. This being so, the only remaining, yet central, issue to be resolved is whether Meadows may share in the constructive trust res.

It is Bierschwale's position that a constructive trust in Meadows' favor is precluded under the facts presented. First,

Bierschwale asserts that the remedy of constructive trust is unavailable to Meadows since Meadows never held a proprietary interest in the apartment complex which formed the basis of the constructive trust res. Second, he argues that a constructive trust is never available to one, such as a broker, who "renders services" only. We feel that these arguments presume an unduly restrictive view of the remedy of constructive trust.

Constructive trusts, being remedial in character, have the very broad function of redressing wrong or unjust enrichment in keeping with basic principles of equity and justice. Fitz-Gerald v. Hull, *supra*; Crumpton v. Scott, 250 S.W.2d 953 (Tex.Civ.App.—Fort Worth 1952, writ ref'd n. r. e.). A transaction may, depending on the circumstances, provide the basis for a constructive trust where one party to that transaction holds funds which in equity and good conscience should be possessed by another. Omohundro v. Matthews, 161 Tex. 367, 341 S.W.2d 401 (1960); Grand Trunk Western R. Co. v. Chicago & W. Ind. R. Co., 131 F.2d 215 (7th Cir. 1942). *See* Dobbs, Handbook on the Law of Remedies, § 4.3 (1973). Moreover, there is no unyielding formula to which a court of equity is bound in decreeing a constructive trust, since the equity of the transaction will shape the measure of relief granted. Magee v. Young, 145 Tex. 485, 198 S.W.2d 883 (1946). *See* 89 C.J.S. Trusts § 139 at 1020; 54 Am.Jur.Trusts §§ 218, 219, 220. In Magee v. Young, *supra*, this court, indicating the flexibility of the constructive trust remedy, stated, "[i]n order to satisfy the demands of justice, courts of equity will indulge in presumptions and even pure fiction." 198 S.W.2d 883 at 885.

It is thus apparent, considering the broad and flexible nature of the constructive trust remedy, that this court may

---

4. In the judgment to be hereafter entered, the sum due Meadows will be that originally found by the trial court; the judgment will also provide that no subtraction be made from the judgment awarded Bierschwale. The judgment will further provide as hereinafter indicated. Note 5.

not only properly impose a constructive trust on the proceeds of the Goldman sale in favor of Bierschwale but also extend its applicability to Meadows as well. This becomes even more apparent when the facts of the transaction are examined. Meadows, as the broker who put together the Oakes-Bierschwale transaction, was entitled to a cash commission under his agreement with Bierschwale. It was pursuant to a subsequent two-party agreement between Bierschwale and Meadows, which was suggested by Bierschwale, that Meadows agreed to accept the Black Hardware notes, rather than cash, as his commission. The Black Hardware notes turned out to be worthless and Bierschwale now asks this court to do equity and impose a constructive trust on the proceeds of the sale of the apartment complex, a sale which will result in a substantial profit for Bierschwale. At the same time Bierschwale attempts to defeat Meadows' claim against him even though Meadows' claim is based upon the same equitable principles Bierschwale affirmatively asserts. It is axiomatic that when a party resorts to equity to obtain relief not available legally, his actions are measured by equitable standards and he may not invoke the strict letter of the law to deny equity to another who has been harmed, at least in part, by the original party's action. Omohundro v. Matthews, *supra*; Deep Oil Development Co. v. Cox, 224 S.W.2d 312 (Tex.Civ.App. —Fort Worth 1949, writ ref'd n. r. e.).

We believe that application of the above principles underlying the remedy of constructive trust requires that Bierschwale share the constructive trust res with Meadows. Bierschwale cannot obtain the benefits of the equitable theory of constructive trust without, in turn, sharing those same benefits with his agent. Meadows and Bierschwale will share in the constructive trust res in the same proportion that the notes held by them individually bear to the total of the notes transferred to them by Oakes.[5]

## APPEAL OF SMITH

As noted above, Oakes pledged numbers one through seven of the Goldman notes to Smith, a holder in due course, to secure a prior obligation owed to Smith by Oakes. Oakes defaulted on his obligation to Smith on June 1, 1970. The dispute between Smith and Bierschwale concerns ownership of the payments made on these notes into the court's treasury prior to June 1, 1970. Smith held a perfected security interest in the Goldman notes by virtue of possession, so Smith's right to the notes themselves is not in question. Tex.Bus. & Comm.Code Ann. § 9.304(a), V.T.C.A. (Tex. UCC 1968) (hereinafter cited by section). Bierschwale claims that Smith is not entitled to the proceeds of the notes arising prior to default because Smith's financing statement did not cover proceeds. Section 9.306(a) defines proceeds to include "whatever is received when collateral or proceeds is sold, exchanged, collected or otherwise disposed of." Undoubtedly the payments made by Goldman into the treasury of the court are "proceeds." Section 9.306(b) states, "[e]xcept where this chapter otherwise provides, a security interest . . . continues in any identifiable proceeds including collections received by the debtor." Section 9.306(c), on which Bierschwale relies, continues, "[t]he security interest in proceeds . . . ceases to be a perfected security interest and becomes unperfected ten days after receipt of the proceeds by the debtor unless (1) a filed financing statement covering the original collateral also covers proceeds; . . . ."[6] Bierschwale argues that Smith's financing statement was improperly filed and thus his security interest in the proceeds of the

---

5. The correct proportion referred to is that adjudged by the trial court; that is, 20.33 percent to Meadows and 79.67 percent to Bierschwale.

6. Note that § 9.306(c) has been amended effective January 1, 1974 to eliminate the necessity to describe proceeds in the financing statement.

notes ceased to be perfected ten days after the proceeds were paid into the registry of the court.

 A security agreement, meeting the formal requirements for a financing statement and describing the notes in question, was filed in the mortgage records of Harris County. This security agreement contained the following language, "[a] mutation of collateral notes by foreclosure of lien or the acceptance of payment or substitution of collateral shall inure to the benefit of Secured Party [Smith] and a security interest in the same shall arise by subrogation in favor of the Secured Party herein." This language would seem to claim the "proceeds" of the Goldman notes as required by Section 9.306(c). However, this security agreement was filed in Harris County; it should have been filed in the Secretary of State's office. *See* Section 9.401(a)(3). A financing statement filed in the wrong place does not protect the secured party against a lien creditor who becomes a lien creditor without knowledge of the security interest. *See* Section 9.-301(a)(2) [7] and Section 9.401(b). *See also* White and Summers, Handbook of the Law Under the Uniform Commercial Code at 832 (1972); and Hawkland, A Transactional Guide to the Uniform Commercial Code, Vol. 2 at 618 (1964). Bierschwale is a lien creditor by virtue of his equitable right to a constructive trust on the Goldman proceeds. Section 9.301(c). The constructive trust arises when legal title passes, in the instant case when the apartment complex was transferred to Oakes. Lotus Oil Co. v. Spires, 240 S.W.2d 357 (Tex.Civ. App.—El Paso 1950, writ ref'd n. r. e.); Elbert v. Waples-Platter Co., 156 S.W. 2d 146 (Tex.Civ.App.—Fort Worth 1941, writ ref'd w. o. m.). When property subject to a constructive trust is transferred, a constructive trust fastens on the proceeds. Smith v. Green, *supra*. Bierschwale's right

arose prior to and without knowledge of Smith's right. Therefore, Bierschwale's claim to the proceeds in question takes precedence over the claim of Smith. Sections 9.301(a)(2); 9.401(b); 9.401(a)(3). That part of the court of civil appeals' judgment awarding Bierschwale the proceeds from notes one through seven is approved.[8]

The judgment of the court of civil appeals is reversed and the cause is remanded to the trial court for entry of judgment consistent with this opinion.

---

7. Note that § 9.301(a)(2) has been amended effective January 1, 1974 to protect a lien creditor who becomes a lien creditor with notice of the security interest.

8. The judgment to be hereafter entered will be consistent with that of the court of civil appeals except as is provided in this opinion.