**Affirmed and Opinion filed April 9, 2013.**



In The

# Fourteenth Court of Appeals

## NO. 14-11-00794-CV

**MARATHON MACHINE TOOLS, INC., Appellant**

**V.**

**DAVIS-LYNCH, INC., Appellee**

**On Appeal from the 333rd District Court**
**Harris County, Texas**
**Trial Court Cause No. 2010-75147**

## O P I N I O N

This case involves competing claims to the right of possession of an industrial lathe that was purchased with stolen funds. The seller of the lathe claims it has a perfected security interest in the lathe, and the embezzlement victim, whose stolen funds were used to buy the lathe, claims it is a lien creditor by virtue of its equitable right to a constructive trust on the lathe.

In three interrelated issues, the seller, Marathon Machine Tools, Inc. ("Marathon"), contends the trial court erred by denying Marathon's motion for summary judgment and granting the cross-motion for summary judgment filed by the embezzlement victim, Davis-Lynch, Inc. ("Davis-Lynch"). We affirm.

## I. BACKGROUND

The uncontroverted summary-judgment evidence shows the following. In June 2009, Marathon, which sells machinery, agreed to sell a lathe and accessories to Hanna-Skye, Inc. ("Hanna-Skye") for $299,825.00. Using stolen funds, Hanna-Skye paid 25% of the purchase price at the time of the order and 40% upon delivery of the lathe; Hanna-Skye owed a final 35% payment due on November 30, 2009. Hanna-Skye never made the final payment. According to Marathon, Hanna-Skye owes Marathon $107,748.75.[1]

Marathon alleges that it and Hanna-Skye entered into a written security agreement whereby Hanna-Skye granted Marathon a security interest in the lathe. Marathon filed a financing statement to perfect its alleged security interest in the lathe on February 4, 2010 with the Texas Secretary of State.

On January 8, 2010, appellee Davis-Lynch filed suit in the United States District Court for the Southern District of Texas against several former employees and various related individuals and entities, including Hanna-Skye. Among other allegations, Davis-Lynch asserted that the former employees misappropriated several million dollars from Davis-Lynch and used the money to fund their own company, Hanna-Skye. On January 12 and 21, 2010, the federal court granted Davis-Lynch's requests for a temporary restraining order and preliminary injunction, enjoining the federal defendants from disposing of any money or

---

[1] It is uncontroverted that the first two payments—made with stolen funds and totaling $192,076.25—covered Marathon's costs in the lathe.

property traceable to the stolen funds. Thus, Hanna-Skye was enjoined from disposing of the lathe that had been purchased from Marathon with stolen funds.

In early February 2010, counsel for Marathon emailed counsel for Davis-Lynch, contending that (1) Marathon had a security interest in the lathe possessed by Hanna-Skye, (2) Hanna-Skye owed over $107,000 for the lathe, and (3) Marathon could not repossess the lathe because of the federal court's injunction. Counsel for Marathon requested that Davis-Lynch release the lathe to Marathon. Counsel for both parties exchanged several emails during February and March 2010 but did not resolve Marathon's claim to the lathe. In March 2010, the federal court granted counsel for Marathon's application for *pro hac vice* status in Davis-Lynch's federal suit so he could represent Marathon as a party in the federal litigation. However, Marathon never filed any pleadings in the federal suit because Marathon's counsel made the tactical decision that, based on Marathon's alleged secured position, it was unnecessary for Marathon to be a party to the federal litigation regarding the stolen funds.

In May 2010, Davis-Lynch filed a motion to enforce a constructive trust on all equipment purchased by Hanna-Skye with the stolen funds. A list of Hanna-Skye's equipment attached to the motion included the subject lathe. In June 2010, the federal court granted Davis-Lynch's motion and ordered Hanna-Skye to transfer its equipment, including the lathe, to Davis-Lynch within twenty-four hours. Davis-Lynch has been in possession of, and has used, the lathe since that time. On November 23, 2010, the federal court rendered final judgment, awarding Davis-Lynch over $60 million in actual and treble damages and attorney's fees against the federal defendants, including Hanna-Skye.

On November 12, 2010, Marathon filed the present suit against Davis-Lynch in Texas state court, alleging Marathon has a superior security interest in the lathe

3

and asserting various claims based on Davis-Lynch's refusal to transfer the lathe to Marathon.[2] Marathon and Davis-Lynch filed competing traditional motions for summary judgment. The trial court denied Marathon's motion and granted Davis-Lynch's motion, rendering final judgment that Marathon take nothing on its claims.

## II. SUMMARY JUDGMENT

In three issues, Marathon contends the trial court erred by denying Marathon's traditional motion for summary judgment and granting Davis-Lynch's traditional motion for summary judgment. Marathon makes similar arguments in each issue; thus, we will refer to all three issues collectively as Marathon's "issues."

### A. Standard of Review

A party moving for traditional summary judgment must establish there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). If the movant establishes a right to summary judgment, the burden shifts to the non-movant to present evidence raising a material fact issue. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000); *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

We review a summary judgment *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). In reviewing the trial court's rulings on cross-motions for summary judgment, we must consider all summary-judgment evidence, determine all issues presented, and render the judgment the trial court

---

[2] Marathon's second amended petition asserts claims for conversion, violations of the Uniform Commercial Code, unjust enrichment, and declaratory relief.

should have rendered. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). We may consider evidence presented by both parties in determining whether to grant either motion. *Expro Americas, LLC v. Sanguine Gas Exploration, LLC*, 351 S.W.3d 915, 919 (Tex. App.—Houston [14th Dist.] 2011, pet. filed).

## B. Cross Motions for Summary Judgment

Davis-Lynch moved for summary judgment on all of Marathon's claims on the following grounds[3]:

1. Marathon did not have a security interest;

2. The federal court granted Davis-Lynch a constructive trust, which included the lathe; Davis-Lynch's federal judgment against Hanna-Skye is unsatisfied; and Marathon does not have a security interest in the lathe that would overcome or defeat Davis-Lynch's equitable ownership rights in the lathe ordered by the federal court; and

3. Not only is Marathon not entitled to possession of the lathe, Marathon is not entitled to attorney's fees or damages due to Davis-Lynch's proper exercise of its rights.

Marathon moved for judgment on the following grounds[4]:

1. Marathon has a perfected security interest in the lathe that is superior to Davis-Lynch's rights;

2. Therefore, Marathon is entitled to possession of the lathe, and Davis-Lynch is liable for conversion;

3. Marathon is entitled to attorney's fees because Davis-Lynch failed to give Marathon notice of its intent to seek a constructive trust against the lathe in the federal litigation (leaving only the amount of attorney's fees to be litigated at trial).

---

[3] The trial court granted Davis-Lynch's First Amended Traditional Motion for Summary Judgment.

[4] Marathon did not move for summary judgment on its unjust enrichment claim.

## C. Right to Possession of Lathe

Both parties claim they have a superior right to possession of the subject lathe.[5] Davis-Lynch claims that Marathon never obtained a security interest in the lathe, but it also asserts as a second ground for summary judgment that Marathon does not have "a security interest in the lathe which would overcome or defeat Davis-Lynch's equitable ownership rights in the lathe as ordered by the Federal Court." For purposes of this Opinion, we assume, without deciding, that at the time Marathon sold the lathe to Hanna-Skye, it retained a security interest in the lathe, and it perfected the security interest by filing a financing statement with the Secretary of State on February 4, 2010. The issue to be decided is whether Davis-Lynch's rights as a lien creditor, by virtue of its equitable right to a constructive trust on the lathe which was purchased with funds stolen from Davis-Lynch,[6] are superior to the rights of Marathon as a secured party with a perfected security interest. We hold that Davis-Lynch's rights as a lien creditor in this case are superior.

A constructive trust arose in favor of Davis-Lynch in June 2009 after Hanna-Skye made partial payments for the lathe using Davis-Lynch's stolen funds and when Marathon transferred the lathe to Hanna-Skye. *See Meadows v. Bierschwale*, 516 S.W.2d 125, 133 (Tex. 1974); *Lotus Oil Co. v. Spires*, 240 S.W.2d 357, 359 (Tex. Civ. App.—El Paso 1950, writ ref'd n.r.e.); *see also Leach v. Conner*, No. 13-01-468-CV, 2003 WL 22860911, at *7–9 (Tex. App.—Corpus Christi Dec. 4,

---

[5] We note that Marathon did not seek an order for the sale of the lathe, with the sale proceeds to be divided according to priority of the secured interests in the lathe. Rather, Marathon sought a judgment granting it possession of the lathe to the exclusion of any rights of Davis-Lynch, while also maintaining it is entitled to keep the $192,076.25 already paid on the lathe with the stolen funds.

[6] It is undisputed that Davis-Lynch obtained a final judgment that Hanna-Skye bought the lathe with funds stolen from Davis-Lynch. Marathon does not attack that final judgment.

6

2003, no pet.) (mem. op.) (providing detailed explanation regarding when constructive trusts arise). A person claiming equitable ownership under a constructive trust is a *lien creditor* with respect to the property covered by the trust. *Meadows*, 516 S.W.2d at 133.[7] Accordingly, Davis-Lynch became a lien creditor with rights to the lathe seven months before Marathon perfected its security interest in February 2010.

Under section 9.317, "[a] security interest or agricultural lien is subordinate to the rights of . . . a person that becomes a lien creditor before . . . the security interest or agricultural lien is perfected." Tex. Bus. & Com. Code Ann. § 9.317(a)(2) (West Supp. 2012).[8] Thus, we hold that Davis-Lynch's constructive trust is superior to Marathon's security interest. *See Meadows*, 516 S.W.2d at 133 (holding, under Chapter 9, lien creditor's constructive trust was superior to secured

---

[7] Under Chapter 9 of the Business and Commerce Code, "lien creditor" is defined as follows:

> (A) a creditor that has acquired a lien on the property involved by attachment, levy, or the like;
>
> (B) an assignee for benefit of creditors from the time of assignment;
>
> (C) a trustee in bankruptcy from the date of the filing of the petition; or
>
> (D) a receiver in equity from the time of appointment.

Tex. Bus. & Com. Code Ann. § 9.102(52) (West Supp. 2012). In determining that the party entitled to a constructive trust was a lien creditor, the *Meadows* court relied on then section 9.301(c) of the Business and Commerce Code, which contained substantially the same definition of "lien creditor" as current section 9.102(52). *See Meadows*, 516 S.W.2d at 133; *see also* Tex. Bus. & Com. Code Ann. § 9.102, cmt. 20 ("[Lien creditor] definition is unchanged in substance from the corresponding definition in former Section 9-301.").

[8] Section 9.317 also contains a subsection specifically pertaining to the priority of purchase-money security interests versus the rights of lien creditors:

> (e) Except as otherwise provided in Sections 9.320 and 9.321, if a person files a financing statement with respect to a purchase-money security interest before or within 20 days after the debtor receives delivery of the collateral, the security interest takes priority over the rights of a buyer, lessee, or lien creditor that arise between the time the security interest attaches and the time of filing.

Tex. Bus. & Com. Code Ann. § 9.317(e).

7

party's unperfected security interest)[9]; *see also In re Jim Ross Tires, Inc.*, 379 B.R. 670, 675 (Bankr. S.D. Tex. 2007) ("[U]nder Texas law [section 9.317(a)], the moment Debtor filed for bankruptcy, the Trustee became a lien creditor whose rights trump those holding unperfected security interests.").[10]  Accordingly, we overrule those portions of Marathon's issues in which it contends its security interest is superior to Davis-Lynch's constructive trust or, alternatively, that fact questions remain on this legal issue.

## D.  Conversion and Unjust Enrichment

In its second amended petition, Marathon asserted a claim for conversion because Davis-Lynch continued to possess the lathe despite Marathon's superior right to possession of the lathe.  *See Rente Co. v. Truckers Exp., Inc.*, 116 S.W.3d 326, 332 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ("Conversion is the unauthorized exercise of dominion and control over property inconsistent with or to the exclusion of another's superior rights in that property.").  Marathon also asserted an equitable claim for unjust enrichment for the same reason, alleging:

> Moreover, under the Doctrine of Unjust Enrichment, MARATHON MACHINE asserts that DAVIS-LYNCH has obtained a benefit from MARATHON MACHINE by retaining the lathe over which it has no right of possession.  Recompense is owed to Plaintiff to avoid an "inequitable windfall" to DAVIS-LYNCH.

---

[9] Again, the *Meadows* court relied on then section 9.301(a) which is currently located in section 9.317(a).  *See Meadows*, 516 S.W.2d at 133.

[10] Marathon cites a Waco Court of Appeals opinion in which the court stated, largely in dicta, that the party entitled to a constructive trust was "an unperfected lien creditor" whose rights were inferior to the secured party.  *MBank-Waco, N.A. v. L. & J., Inc.*, 754 S.W.2d 245, 251 (Tex. App.—Waco 1988, writ denied).  We note that the *MBank* court did not mention section 9.317 (or then section 9.301), which is the controlling provision in the present case.  The main holding of *MBank* was based on "pre-Code rules and principles" because the secured party in that case could not rely on the Texas Business and Commerce Code to protect it.  *Id.* at 246, 250.  Thus, *MBank* is distinguishable.

Each of these claims rests upon Marathon's assumption that Davis-Lynch *does not* have a superior right of possession. Because we hold that Davis-Lynch does have a superior right to possession of the lathe, these claims fail.[11] We overrule those portions of Marathon's issues in which it contends the trial court erred in granting Davis-Lynch summary judgment on Marathon's pleaded causes of action for conversion and unjust enrichment.

## E. Attorney's Fees for Violation of Notice Requirement

Marathon asserts it is entitled, as a matter of law, to recover attorney's fees from Davis-Lynch because of Davis-Lynch's failure to provide notice to Marathon of its intent to seek a constructive trust in the federal litigation. In support, Marathon cites several sections of Chapter 9. *See* Tex. Bus. & Com. Code Ann. §§ 9.602; 9.611(c)(3)(B) & cmt. 4; 9.625(b) (West 2011). However, these sections support the proposition that a "secured party" seeking disposition of property under section 9.610 must provide authenticated notification to certain parties interested in the property. *See id.* § 9.611(b), (c). Davis-Lynch was not a "secured party" that disposed of the lathe pursuant to section 9.610. *See id.* § 9.610 (West 2011) (entitled "Disposition of Collateral After Default"). Thus, Davis-Lynch was not required under the cited sections to provide notification to Marathon of Davis-Lynch's motion to enforce the constructive trust. Additionally, the uncontroverted summary-judgment evidence contains emails from early March 2010 that show Marathon was aware Davis-Lynch claimed that Hanna-Skye purchased the lathe using funds stolen from Davis-Lynch, and that Davis-Lynch intended to ask the

---

[11] Marathon does not argue Davis-Lynch should have already sold the lathe and distributed to Marathon any proceeds from the sale exceeding the amount of Davis-Lynch's equitable interest in the lathe; Marathon's consistent position has been that Davis-Lynch has had no right to possess the lathe at any time. It is questionable from the record whether the lathe had any "foreclosure sale" value in excess of the nearly $200,000 in stolen funds paid to purchase it.

9

federal court to impose a constructive trust on all stolen funds distributed by Hanna-Skye to third parties.

We overrule those portions of Marathon's issues in which it contends it is entitled to judgment on its claim for attorney's fees due to Davis-Lynch's alleged failure to provide section 9.611 notice to Marathon.

### III. CONCLUSION

The trial court did not err in denying Marathon's motion for summary judgment and granting Davis-Lynch's motion for summary judgment. Accordingly, we affirm the judgment.


/s/    Margaret Garner Mirabal
Senior Justice


Panel consists of Justices Boyce, McCally, and Mirabal.[12]

---

[12] Senior Justice Margaret Garner Mirabal sitting by assignment.