# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 23, 2025

Lyle W. Cayce
Clerk

———————————

No. 23-11208

———————————

In the Matter of CM Resort, L.L.C.,

*Debtor*,

Suzann Ruff,

*Appellant*,

*versus*

Destination Development Partners, Incorporated; CM Resort Management, L.L.C.; Destination Development Community III, Limited; Sundance Residence Club, L.L.C.; Sundance Partners, L.L.C.; Sundance Residences, L.L.C.; Icarus Investments, Incorporated, CM Resort L.L.C.; Specfac Group L.L.C.; Sundance Lodge L.L.C.,

*Appellees*.

———————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:22-CV-1035

———————————————————————

Before Ho, Duncan, and Oldham, *Circuit Judges*.

Per Curiam:[*]

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-11208

In 2017, Suzann Ruff won an arbitration award that imposed a constructive trust over certain assets mismanaged by her son Michael. Michael has spent eight years attacking that judgment. We hold his attacks are baseless and reverse the district court's judgment to the contrary.

I

In 1998, Suzann Ruff's husband died, leaving her assets worth over $50 million. Those assets included approximately 5,000 acres of real property in Palo Pinto County, Texas. Widowed and desperate for help, she enlisted her son Michael to manage her finances. As part of that effort, Suzann transferred all her land in Palo Pinto County for Michael to develop. We refer to this land as the Palo Pinto Property or "PPP." Critically, Suzann did not deed the PPP to Michael himself. Instead, she transferred it to a Texas limited partnership called Icarus Investments IV Limited ("Icarus"), which Michael managed and directed.

Years later, the Ruffs' relationship soured. Suzann concluded that Michael had taken advantage of her and mismanaged her finances, so she sued him in Dallas County Probate Court for breach of fiduciary duty, fraud, and other related torts. Michael filed a motion to compel arbitration, which the probate court granted.

Michael then moved property to frustrate his mother's litigation efforts. As relevant here, he moved the PPP away from Icarus to separate companies and partnerships that he controlled as the sole manager or member.[1] After these transfers, Suzann filed a second lawsuit seeking to

---

[1] All told, these transactions involved the ten captioned entities, which were the initial parties to the bankruptcy underlying this case. They were controlled by Michael both in his individual capacity and in his capacity as the sole trustee of the Commander Neyo Trust and the MAR Living Trust.

2

recover the property from the new transferees. More of the same followed: Michael transferred the PPP *again* to yet more entities that he created and controlled.

Suzann pressed forward in the arbitration. Notwithstanding that he was the one who compelled the arbitration in the first place, Michael dropped his claims halfway through trial and filed a Refusal to Arbitrate. After its five-day final hearing, the arbitration panel determined that Michael had breached fiduciary duties to Suzann and committed fraud, misapplication of fiduciary property, conversion, and negligence. Its award ("Final Award") to Suzann included $49,000,000 in damages, along with millions more in attorneys' fees, expenses, and interest. The panel also imposed a constructive trust in favor of Suzann on "any real property belonging to or originating from property belonging to Suzann Ruff . . . and held or owned, in whole and in part, by Michael Ruff, in any capacity" related to the PPP. The Dallas County Probate Court entered a final judgment confirming the panel's award and rendering judgment against Michael. The Court of Appeals affirmed, and the Supreme Court of Texas denied review.

But the fight was far from over. Michael has spent the intervening years carpet-bombing the state and federal courts of Texas with collateral attacks on that judgment.[2] As part of those efforts, ten of the entities involved

---

[2] *See, e.g.*, *In re JMV Holdings LLC*, No. 23-40373, 2024 WL 885126 (5th Cir. Mar. 1, 2024) (appealing from *In re JMV Holdings LLC*, No. 18-42552, 2022 WL 996372 (Bankr. E.D. Tex. Mar. 31, 2022), and *Ruff v. Ruff*, No. 4:22-CV-00321, 2023 WL 3852687 (E.D. Tex. June 6, 2023), all finding that part of the constructive trust imposed in the Final Award covers certain assets Michael and his wife sought to shield); *In re Ruff*, No. 05-18-00671-CV, 2018 WL 2979859 (Tex. App.—Dallas June 14, 2018, no pet.) (denying mandamus relief from 2017 probate court judgment); *In re Ruff*, No. 05-19-00526-CV, 2019 WL 2211081 (Tex. App.—Dallas May 21, 2019, no pet.) (denying mandamus relief from post-judgment order delivered by substituted service); *In re Ruff*, No. 05-18-01456-CV, 2018

No. 23-11208

declared bankruptcy in 2018 in the United States Bankruptcy Court for the Northern District of Texas.[3] Seven of these entities' cases were later dismissed, leaving the remaining parties on appeal—CM Resort, Sundance Lodge, and Specfac ("the Debtors")—which are the current owners of the PPP. Suzann then initiated an adversary proceeding against the Debtors seeking to recover the PPP. The bankruptcy court issued an oral ruling against Suzann. Suzann timely appealed to the Northern District of Texas. That court affirmed.

We have jurisdiction over Suzann's appeal in the adversary proceeding because it was a "core proceeding" arising under Title 11. 28 U.S.C. § 157(b). *See id.* § 157(b)(2). The district court had statutory appellate jurisdiction. *See id.* § 158(a)(1). And so do we. *See id.* § 158(d)(1). We review the bankruptcy court's legal conclusions *de novo* and its findings of fact for clear error. *In re Gerhardt*, 348 F.3d 89, 91 (5th Cir. 2003).

---

WL 6427283 (Tex. App.—Dallas Dec. 6, 2018, no pet.) (denying mandamus relief from post-judgment discovery order); *Ruff v. Ruff*, No. 05-18-00326-CV, 2018 WL 2926639 (Tex. App.—Dallas June 8, 2018) (contesting probate court setting supersedeas bond amount at $24,500,000 after hearing finding his net worth to exceed $49,000,000); *Clayton Mountain Dev., LLC v. Ruff*, No. 11-20-00114-CV, 2021 WL 3413644 (Tex. App.—Eastland Aug. 5, 2021, no pet.); *Borderline Mgmt., LLC v. Ruff*, No. 11-19-00152-CV, 2020 WL 1061485 (Tex. App.—Eastland Mar. 5, 2020, pet. denied); *Clayton Mountain, LLC v. Ruff*, No. 11-20-00034-CV, 2021 WL 3414754 (Tex. App.—Eastland Aug. 5, 2021, no pet.); *Clayton Mountain Dev., LLC v. Ruff*, No. 11-20-00101-CV, 2021 WL 3414953 (Tex. App.—Eastland Aug. 5, 2021, no pet.); *Ruff v. Ruff*, No. 05-21-00157-CV, 2022 WL 420353 (Tex. App.—Dallas Feb. 11, 2022, pet. denied); *Ruff v. Ruff*, No. 11-20-00122-CV, 2021 WL 388707 (Tex. App.—Eastland Feb. 4, 2021, pet. denied); *Ruff v. JMV Holdings*, No. 17-7279 (Dist. Ct., Dallas Cnty., Tex. Dec. 18, 2017); *Ruff v. Ruff*, No. 05-13-00317-CV, 2013 WL 2470750 (Tex. App.—Dallas June 10, 2013, no pet.); *Ruff v. Ruff*, No. 4:22-CV-00321, 2023 WL 2574021 (E.D. Tex. Mar. 20, 2023).

[3] The debtors in the jointly administered bankruptcy were the ten original parties to this appeal. *See supra* note 1.

## II

Suzann's arbitration award came before the bankruptcy court as a final judgment rendered by a Dallas County Probate Court. Affording full faith and credit to that final judgment of a state court, we hold it covers the PPP currently held by the Debtors.

The Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to "give the Texas judgment the same effect as it would have in a Texas court." *In re Brady Mun. Gas Corp.*, 936 F.2d 212, 217 (5th Cir. 1991). In a Texas court, the effect of a judgment turns in part on whether it is ambiguous. Texas courts interpret unambiguous judgments by "adher[ing] to the literal language used." *Hagen v. Hagen*, 282 S.W.3d 899, 901 (Tex. 2009). Where a judgment is ambiguous, however, it "is interpreted by reviewing both the decree as a whole and the record." *Id.* A judgment is ambiguous where "its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

We find that the Final Award's description of land parcels in Palo Pinto County was ambiguous. The Final Award imposed a constructive trust in favor of Suzann encompassing, *inter alia*,

> [A]ny real property belonging to or originating from property belonging to Suzann Ruff . . . and held or owned, in whole or in part, by Michael Ruff, in any capacity, relating in any way to the so-called Palo Pinto County, Texas, properties specifically including, but not limited to those properties identified in subsections hhhhh through kkkkk on Exhibit "A."

But the referenced subsections list only generic acreage amounts in Palo Pinto County. *See, e.g.*, ROA.6705 ("≈ 4,683 acre real property asset located in Palo Pinto County, Texas"). That text alone does not reveal *which* parcels of land are covered by the Final Award.

5

No. 23-11208

Looking to the entire record, however, there is no doubt that the Final Award covers the PPP held by the Debtors. The arbitration panel that issued the Final Award conducted a five-day hearing with live testimony, depositions, and other evidence. The parties were represented by counsel, and each had a "full opportunity to present their case." ROA.6691. And that record established that Suzann had one ranch in Palo Pinto County; she transferred that PPP to Michael; he transferred it (in an attempt to evade liability) to the Debtors; and that singular PPP was the subject of the Final Award's constructive trust.

Start with Suzann's initial assets. Suzann conveyed "[t]he ranch" to Icarus: about 5,000 acres of land that the Ruff family visited for holidays and where her late husband did business. ROA.6764. Based on her uncontroverted testimony, the deed to Icarus conveyed her entire real estate holdings in Palo Pinto County, save five acres that Michael did not want to develop. When asked what land was described in the Final Award, Suzann identified it as "the ranch, the old Seven Bar R." ROA.6778. Suzann had one and only one Palo Pinto ranch to transfer to Michael, and she transferred that singular ranch to the Michael-controlled entity called Icarus.

Now consider the Debtors. It is undisputed that they are controlled by Michael and that they presently hold approximately 5,000 acres of land in Palo Pinto County. How did they get it? The bankruptcy court found that, "[f]rom an operational standpoint . . . virtually none of the debtors is an operating entity." None of the Debtors generated revenue, held any banking or brokerage accounts, had any accounts receivable, or conducted any business within 90 days of filing under Chapter 11. The Debtors' *only* assets included real estate in Palo Pinto County and various litigation claims. It strains credulity to conclude that these empty shell corporations could have acquired thousands of acres in real property in Palo Pinto County, separate and apart from the land Suzann transferred to Michael's Icarus, which in turn

6

transferred it to the Debtors. And it altogether *breaks* credulity to contend that the 5,000 acres that Suzann gave to Michael somehow disappeared—at the same time that Michael's otherwise-asset-less Debtors magically found some other 5,000 acres in the same county. The 5,000 acres transferred by Suzann and held by Michael's Debtors are obviously one and the same.

Finally, we are not concerned that the judgment names Michael, not the Debtors. The Final Award includes an expansive modifier to cover property held by Michael "in any capacity." ROA.6693. And by their nature, "[c]onstructive trusts, being remedial in character, have the very broad function of redressing wrong or unjust enrichment in keeping with basic principles of equity and justice." *Meadows v. Bierschwale*, 516 S.W.2d 125, 131 (Tex. 1974). It is therefore clear that the Final Award extends to the PPP, which Michael holds indirectly through the Debtors.

The bankruptcy court, by contrast, read the constructive trust to reach *only* "real estate held or owned by Michael himself in any capacity as opposed to any other entity." ROA.243. That is wrong coming and going. It amounts to reading "in any capacity" as "in his personal capacity," ignoring the trust's plain language. And it contradicts the record evidence of Michael's total control over the Debtors, particularly in his capacity as trustee of the MAR Living Trust (the sole member and equity owner of all three Debtors).

\* \* \*

The district court's judgment is REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.