W. Howell COCKE, Jr. et ux, Appellants,

v.

PACIFIC GULF DEVELOPMENT CORPORATION et al, Appellees.

No. 17479.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Jan. 10, 1980.

Hoover, Cox & Shearer, Dermot Rigg, Houston, for appellants.

Chamberlain, Hrdlicka, White, Johnson & Williams, James A. Carmody, Houston, for appellees.

Before EVANS, PEDEN and WARREN, JJ.

EVANS, Justice.

The plaintiff, W. Howell Cocke, Jr., and his wife Beulah Cocke, the owners-lessors of a motor hotel, appeal from a declaratory judgment construing the term "total gross room revenues" and awarding money damages.

In 1964 plaintiffs herein called ("Cocke") and the defendants, Grisebaum Group, entered into an agreement whereby Cocke purchased certain land on the Katy Freeway, built a motor hotel and leased the premises to the Grisebaum Group for the purpose of furnishing and managing the same as a motor hotel. The lease agreement provided for a minimum base rental, to be determined by taking a percentage of Cocke's obligation for the total project cost, and for an additional rental to be computed on the basis of 27½% of the "total gross room revenues" generated from the hotel operations.

In July 1965, the Grisebaum Group took possession of the hotel and began to operate it as a Howard Johnson franchise. At that time, Cocke was given the opportunity to participate in the purchase of certain black and white television sets to be placed in each room, and upon his election to participate, the amount of his obligation with respect to such purchase was added to his cost basis in determining the minimum base rental. The following year, Cocke was again approached by the Grisebaum Group with a similar proposition to participate in the purchase of color television sets for all of the rooms. However, he chose not to participate in that investment, and the Grisebaum Group obtained the television sets upon their own credit. In 1968, additional rooms were added to the motor hotel and color television sets were put in each room. Cocke participated in the cost of expanding the facilities, but did not participate in paying for the television sets.

In 1972, the Grisebaum Group subleased the motor hotel to Howard Johnson, and Johnson, as the hotel manager, became responsible for making appropriate distribution of the hotel revenues to Cocke and to the Grisebaum Group. Up until this time, the Grisebaum Group had reported to Cocke, as one figure, the "total gross room revenues" received from the hotel's operation, and their accounting did not indicate that color television rentals and credit card discounts were excluded from the amount reported. After Howard Johnson took over the hotel management, its accounting to Cocke specifically reflected that deductions had been made for color television rentals and for credit card discounts. Whereupon, Cocke advised Howard Johnson that such deductions were improper and that unless Howard Johnson included such amounts in its reporting of "total gross room revenues", the lease would be terminated. From that point on, Howard Johnson included such amounts in its payments to Cocke, but made a proportionate reduction in its payment to the Grisebaum Group for the amount of the color television set rentals and credit card discounts.

This suit was instituted by Cocke in April 1976, to obtain a declaratory judgment construing the term "total gross room revenues" and to recover from the Grisebaum Group the amount it claimed the Grisebaum Group had underpaid the "total gross room revenues" prior to 1972, when Howard Johnson had assumed the hotel management. The Grisebaum Group answered and sought by counterclaim a declaratory judgment upholding its interpretation of the lease and a money judgment against Cocke for an amount which it claimed Cocke had been unjustly enriched by Howard Johnson's overpayment of such additional rental. All issues were tried to the court and damages were stipulated for each appropriate time period.

The trial court found that the parties to the lease had intended that only actual receipts from room sales were to be used as a basis for the determination of rent, and that from the standpoint of generally accepted accounting principles, it was proper to include within the term "total gross room revenues" only those portions of credit card

invoices actually remitted by the credit card companies. It further found that all television sets installed in the hotel rooms, black and white and color, were intended by the parties to be treated as furniture, rather than as improvements, under the terms of the lease. On the basis of these and other findings, the trial court concluded that Cocke had been unjustly enriched at the expense of the Grisebaum Group in the sum of $19,538.00 and that Cocke held that sum in a constructive trust in favor of the Grisebaum Group. It accordingly entered judgment in favor of the Grisebaum Group for the sum of $19,538, representing the amount of overpayment by Howard Johnson to Cocke for rentals attributable to credit card discounts from May 1, 1972 through the calendar year 1977. The trial court denied the plaintiffs' claim for recovery of the sum of $55,421.64, as "total gross room rentals" attributable to color television rentals and credit card discounts prior to 1972, finding that such claims were barred by the statutes of limitation.

In his first point of error Cocke contends, in effect, that the trial court lacked jurisdiction to enter the judgment because of the absence of an indispensable party, Howard Johnson.

This point will be overruled. The counterclaim of the Grisebaum Group was not based upon any contractual relationship between the parties and Howard Johnson, and the nature of the action was a suit to recover moneys from Cocke on the theory of unjust enrichment. Neither Cocke nor the Grisebaum Group sought a judgment binding upon Howard Johnson, and there is no evidence that Howard Johnson claimed any interest in the subject matter of the suit. Certainly, there is no showing that his presence was so indispensable that his absence deprived the trial court of jurisdiction to adjudicate the rights of the parties to the action. Rule 39, Texas Rules of Civil Procedure. *Cooper v. Texas Gulf Industries, Inc.*, 513 S.W.2d 200 (Tex.1974).

In his second point of error Cocke contends that the trial court erred in impressing a constructive trust on the amount of the overpayment to him, arguing that there was no evidence of fraud or of a fiduciary relationship upon which such a remedy could be based.

In *Meadows v. Bierschwale*, 516 S.W.2d 125, 131 (1974), the Texas Supreme Court stated:

Constructive trusts, being remedial in character, have the very broad function of redressing wrong or unjust enrichment in keeping with basic principles of equity and justice. *Fitz-Gerald v. Hull*, supra [150 Tex. 39, 237 S.W.2d 256]; *Crumpton v. Scott*, 250 S.W.2d 953 (Tex.Civ.App.— Fort Worth 1952, writ ref'd n. r. e.). A transaction may, depending on the circumstances, provide the basis for a constructive trust where one party to that transaction holds funds which in equity and good conscience should be possessed by another. *Omohundro v. Matthews*, 161 Tex. 367, 341 S.W.2d 401 (1960); *Grand Trunk Western R. Co. v. Chicago & W. Ind. R. Co.*, 131 F.2d 215 (7th Cir. 1942). See Dobbs, Handbook on the Law of Remedies, § 4.3 (1973). Moreover, there is no unyielding formula to which a court of equity is bound in decreeing a constructive trust, since the equity of the transaction will shape the measure of relief granted. *Magee v. Young*, 145 Tex. 485, 198 S.W.2d 883 (1946). See 89 C.J.S. Trusts § 139 at 1020; 54 Am.Jur. Trusts §§ 218, 219, 220. In *Magee v. Young*, supra, this court, indicating the flexibility of the constructive trust remedy, stated, "[i]n order to satisfy the demands of justice, courts of equity will indulge in presumptions and even pure fiction." 198 S.W.2d 883 at 885.

Thus, under appropriate circumstances, a court may impress a constructive trust upon funds which, through mistake, have been paid to one party to a transaction and which, in equity and good conscience, should be transferred to another. *Meadows v. Bierschwale*, supra; *Omohundro v. Matthews*, 161 Tex. 367, 341 S.W.2d 401 (1960). It is not essential, in every case, that an actual trust or fiduciary relationship exist before the remedy is available. *Meadows v.*

*Bierschwale*, supra, p. 128; *Austin Lake Estates, Inc. v. Meyer*, 557 S.W.2d 380, 382, (Tex.Civ.App.—Austin (1977) no writ). In the case at bar, Howard Johnson, responding to Cocke's demand that he was entitled to the sums in question, mistakenly paid over to Cocke funds which rightly belonged to the Grisebaum Group. Under the circumstances of this case, the trial court acted within its authority in impressing a constructive trust on the funds in the hands of Cocke to prevent unjust enrichment and to insure that the ends of justice would be met. *Meadows v. Bierschwale*, supra. Cocke's second point of error is overruled.

■ In his next two points of error, Cocke contends, in effect, that the evidence is insufficient to establish a basis for the imposition of a constructive trust. These points will be overruled. Grisebaum testified positively and without contradiction that Howard Johnson was paying Cocke 27½% of the credit card deductions and deducting that same amount from the rent paid to the Grisebaum Group. The total amount of the credit card discounts was stipulated, and the trial court could properly have found from the evidence that Howard Johnson had paid over the specified percentage of such amount to Cocke, responding to Cocke's threat that the lease would be terminated unless such amount was paid to him. The evidence is legally and factually sufficient to support the trial court's presumed finding and judgment in this respect.

■ In his fifth point of error Cocke contends that the term "total gross room revenues" is unambiguous and that the term should be interpreted according to the ordinary and general accepted meaning of each of the words used in the term. This point is overruled.

The trial court could have concluded from the evidence that the term "total gross room revenues" meant something different to each of the parties involved. Cocke himself admitted that the term was susceptible to more than one meaning. Each of the parties put on expert witnesses who reached different conclusions as to the

meaning of the term under generally accepted accounting principles. The trial court accepted the interpretation given by the witness for the Grisebaum Group that the term did not include the amount of credit card discounts. On the other hand, the trial court chose the interpretation given by Cocke's witness as to the amount attributable to color television rentals, finding that such amount should be included.

The words "total", "gross", "room", and "revenues", considered separately, may, under most circumstances, have one clear meaning. However, such words when used together as a term may be reasonably susceptible to more than one interpretation. The trial court did not err in concluding that the term was ambiguous and in resolving such ambiguity by considering the evidence presented with respect to the meaning of the term. *Trinity Universal Insurance Company v. Ponsford Brothers*, 423 S.W.2d 571 (Tex.1968); *Bobbie Brooks, Inc. v. Goldstein*, 567 S.W.2d 902 (Tex.Civ.App.—Eastland 1978, writ ref'd. n. r. e.).

■ By way of crosspoint, the Grisebaum Group complains that the trial court erred in determining that the term "total, gross, room revenues" included the amount of revenues attributable to color television sets. The Grisebaum Group argues that the color television revenues were separate items of income, not includable in room revenues under applicable accounting standards, and that Cocke, having declined the opportunity to participate in the purchase of such color television sets, should not be entitled to have such revenues included in the determination of the amount due as additional rental. The Grisebaum Group further argues that the lease agreement supports their position, providing, in effect, that the cost of items paid for, supplied or furnished by the lessee are not to be included in the computation of rent.

The crosspoint will be overruled. The evidence shows that a basic room charge was made to each hotel customer without specification of any rental fee for television sets or other room fixtures. It was, therefore, reasonable for the trial court to con-

clude that the lease provision applied only to the computation of the basic rental and that the parties intended that the term "total gross room rentals revenues" would include revenues attributable to the color television sets.

The trial court's judgment is affirmed.

PEDEN and WARREN, JJ., concur.