## PAPA GINO'S OF AMERICA, INC. *v.*
## BROADMANOR ASSOCIATES, LTD.
## (3539)

HULL, BORDEN and DALY, Js.

Argued October 2—decision released November 26, 1985

*J. Rene Frechette,* with whom, on the brief, was *Kathleen M. Hannon,* for the appellant (plaintiff).

*JoAnn Paul,* for the appellee (defendant).

DALY, J. The plaintiff lessee instituted this action for a declaratory judgment and for injunctive relief, seeking the determination of the meaning of the term "gross sales" contained in a lease held by the defendant lessor. The trial court, acting on motions for summary judgment filed by both parties, ruled that free and discounted meals offered to the plaintiff's employees are exempt from the calculation of gross sales; that aspect of the summary judgment is not involved in this appeal. The court also ruled that the face value of discount coupons made available to the public and redeemed at the plaintiff's restaurant are not exempt from the gross sales calculation. The plaintiff appeals from this second aspect of the court's ruling.

The facts are not in dispute. On July 1, 1978, the plaintiff, Papa Gino's of America, Inc., entered into a written lease with the predecessor in title to the defendant, Broadmanor Associates, Ltd., for the rental of commercial premises at the Manchester Shopping Parkade where the plaintiff operates a restaurant business. The lease was for a term of ten years with three options of five years each to extend the lease. The lease provided for a fixed minimum rental payment at a specified monthly rate, and for additional rent equal to five percent of the plaintiff's "annual Gross Sales in excess of $285,000 . . . ."

Under the lease, the plaintiff, as lessee, was to maintain a complete and accurate set of books and records of its gross sales showing daily receipts. If an audit disclosed a liability for rent, the plaintiff would be liable for the deficiency, together with the cost of the audit.[1]

---

[1] Article II, § 2 (D) of the lease provides in pertinent part: "Tenant shall throughout the term maintain a complete and accurate set of books and records of its Gross Sales, in accordance with good accounting practice in this regard. Such books and records shall show daily receipts from all sales and other transactions constituting Tenant's Gross Sales, as defined herein, whether of Tenant or any assignee, subtenant, licensee, concessionaire, or any other party doing business at the leased premises."

In the event that the defendant, as lessor, brought suit for a breach of the lease, the plaintiff could be liable for the expenses of litigation, including attorney's fees.[2]

It has been the plaintiff's policy and practice to provide meals free of charge or at a discount to its employees during their work shifts. The plaintiff has also made discount coupons available to the public. Upon presentation, the plaintiff deducted the face value of each coupon from the regular menu price of the goods and services purchased by the holder.

In 1981, the defendant purchased the parkade subject to the lease held by the plaintiff. In October, 1982, the defendant notified the plaintiff of its intention to proceed against the plaintiff for deficiencies in the percentage rental amount because the plaintiff had not included the value of free and discounted employees' meals and the face value of the discount coupons in its report of gross sales. To protect its rights under the lease, the plaintiff paid, under protest, $963.21 to the defendant's attorney to be held in escrow pending the resolution of the dispute. Of that amount, $150 is attributable to attorney's fees, $550 for audit expenses, and the remainder represents the amount claimed for the rental deficiencies and interest.

The plaintiff initiated this action for a determination that it was not in default of the lease, for a return of the escrow funds and for an injunction restraining the defendant from proceeding against it. On motions for summary judgment filed by both parties, the trial court

[2] Article XV, § 1 (c) of the lease provides in pertinent part: "In case suit shall be brought for recovery of possession of the leased premises and/or for the recovery of rent or any other amounts due under the provisions of this Lease or because of the breach of any other covenant herein contained on the part of Tenant to be kept or performed, and such breach shall be established, Tenant shall pay to Landlord all expenses incurred therefore, including out-of-pocket attorneys' fees."

held that the term "gross sales"[3] in the lease included the face value of the discount coupons made available to the public upon redemption. The court declined to issue injunctive relief.

The plaintiff has raised the following issues on appeal: (1) whether the trial court erred in failing to declare that the term "gross sales" in the lease does not include the face value of the discount coupons made available to the public, because the plaintiff receives no monetary compensation for the amount discounted in sales to coupon holders; and (2) whether the trial court erred in denying the return of the escrow fund to the plaintiff. We find that the trial court was in error on both points.

"A lease is a contract. In its construction, three elementary principles must be kept constantly in mind: (1) the intention of the parties is controlling and must

---

[3] Article XXVIII, § 1 (b) of the lease provides: " 'Gross Sales' and 'Tenant's Gross Sales' shall mean the entire gross income from the use or occupancy of the leased premises (including advertising and demonstrations) and of all business conducted thereat. These terms shall also include the full price of all sales made and services rendered at the leased premises, including all mail and telephone orders received at the leased premises, deposits not refunded to customers, orders taken at said premises though filled elsewhere and orders taken elsewhere though filled at the leased premises, whether by Tenant, any assignee, subtenant, licensee or concessionaire of Tenant or by any other party doing business at said premises. Said terms shall not include: vending machine sales of cigarettes and music, transfer of merchandise from one store of Tenant to another, when not for the purpose of completing a sale theretofore made at said premises or to deprive Landlord of credit for a sale thereat; return of merchandise to shippers or manufacturers; merchandise returned by customers for which a credit is allowed; sale of Tenant's fixtures. There shall also be deducted, to the extent to which they shall be included in the sales price, the amount of sales or other taxes which may be imposed by law on the purchaser. Sales for cash or credit shall be treated as a sale for the full price in the month when made, irrespective of the time of payment or whether payment shall be made. Any matters herein mentioned which shall occur outside the leased store but within the Shopping Center are included in Tenant's Gross Sales. The immediately preceding sentence shall not be deemed or construed to expand any rights of Tenant hereunder."

be gathered from the language of the lease in the light of the circumstances surrounding the parties at the execution of the instrument; (2) the language must be given its ordinary meaning unless a technical or special meaning is clearly intended; (3) the lease must be construed as a whole and in such a manner as to give effect to every provision, if reasonably possible. *Ingalls* v. *Roger Smith Hotels Corporation,* 143 Conn. 1, 6, 118 A.2d 463 (1955)." *Hatcho Corporation* v. *Della Pietra,* 195 Conn. 18, 20, 485 A.2d 1285 (1985); *Central New Haven Development Corporation* v. *La Crepe, Inc.,* 177 Conn. 212, 214–15, 413 A.2d 840 (1979). It has been established that a party is entitled to rely on its written contract as the final integration of its rights and duties. *Zullo* v. *Smith,* 179 Conn. 596, 601, 427 A.2d 409 (1980).

A lease which provides for a percentage rent added to a fixed rent is a common arrangement for the rental of commercial premises. McMichael & O'Keefe, Leases-Percentage, Short and Long Term (6th Ed.) pp. 5, 32. The percentage lease gears the landlord's return to the productivity of his location, such productivity being measured by the tenant's gross dollar volume in sales. Note, "The Percentage Lease—Its Functions and Drafting Problems," 61 Harv. L. Rev. 317, 318 (1948). In addition to a percentage lease arrangement, the lease in question defined "gross sales" to mean "the entire gross income from the use or occupancy of the leased premises (including advertising and demonstrations) and of all business conducted thereat. These terms shall also include the full price of all sales made and services rendered at the leased premises . . . . There shall also be deducted, to the extent to which they shall be included in the sales price, the amount of sales or other taxes which may be imposed by law on the purchaser." See footnote 3, supra.

The definition of the term "gross sales" has no definitive judicial meaning, is imprecise, and depends prin-

cipally upon the wording established by the parties in a particular contract. Annot., 58 A.L.R.3d 384, 400. The term "sale," as ordinarily defined and popularly understood, means the transfer of property for money *paid* or to be paid; this is the usage of the term in the lease with which we are here concerned. *Freund Motor Co.* v. *Alma Realty & Investment Co.,* 235 Mo. App. 587, 142 S.W.2d 793 (1940). The term "receipts" indicates money received from a sale. *Taft Realty Corporation* v. *Yorkhaven Enterprises, Inc.,* 146 Conn. 338, 343, 150 A.2d 597 (1959). Further, under the Connecticut sales tax laws, cash discounts are not included as taxable income and not considered as "gross receipts." General Statutes § 12-407 (9). In the hotel business, total gross revenues from room rentals do not include credit card discounts. *Cocke* v. *Pacific Gulf Development Corporation,* 594 S.W.2d 545, 549 (Tex. Civ. App. 1980). It would appear, then, that "gross sales" and "receipts" indicate money or cash that is actually received, and therefore would not apply to the discount coupons.

"The courts do not favor constructions in derogation of the course of conduct of the parties." *Marlton Operating Corporation* v. *Local Textiles Mills, Inc.,* 137 N.Y.S.2d 438, 440 (Sup. Ct. N.Y. 1954). The plaintiff's undisputed affidavit indicates that it did not consider the coupons as "gross sales" at any time during the almost three year duration of the lease which preceded the lease transfer to the defendant. The purpose of the coupons, presumably, is to lure customers into the plaintiff's restaurant with the expectation that they will purchase other items as well. By this method, the landlord receives a benefit from the gross sales. To give the landlord the value of the inducement as well (the coupon) would be to construe the lease as allowing the landlord an additional, uncontemplated kind of "double recovery." We conclude that this is unwarranted under the

circumstances and, therefore, that the trial court incorrectly included the face value of the discount coupons offered to the restaurant patrons in the calculation of gross sales generated by the plaintiff's business.

With regard to attorney's fees and audit expenses, the plaintiff is entitled to a full refund of the amounts held in escrow. "The rule in Connecticut is that absent contractual or statutory authorization, each party must pay its own attorney's fees." *Gino's Pizza of East Hartford, Inc.* v. *Kaplan,* 193 Conn. 135, 140, 475 A.2d 305 (1984). Attorney's fees, according to the lease, are recoverable under Article XV, § 1 (c), where the landlord successfully institutes an action against the tenant for breach of the lease. Such is not the case here, as the defendant did not bring suit for recovery of rent nor was there a judicial determination that the plaintiff breached the lease. Article II, § 2 (D) authorizes the reimbursement of audit expenses if a rent deficiency is established. No such deficiency was established and, therefore, the trial court was justified in disallowing the defendant's claim to these amounts held in the escrow fund. Further, in light of our holding that the lease does not require the plaintiff to pay rent on the basis of a percentage of the value of the discount coupons, the plaintiff is entitled to the return of the entire escrow fund paid pending resolution of those claims.

With regard to the plaintiff's claim for injunctive relief, it is now clear that the substantive issues raised in the case have been decided. There is no suggestion that the defendant will disregard this decision. Thus, we find no error in the trial court's declining to issue injunctive relief.

There is error in part, the judgment is set aside and the case is remanded with direction to render judgment as on file except that the term "gross sales" shall not

include the value of the subject discount coupons, and the amounts held in escrow shall be awarded to the plaintiff.

In this opinion the other judges concurred.