[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT(#106) AND ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (#108)
On April 11, 1994, the plaintiff Re-Kap Travel (Re-Kap) filed a one-count complaint against the defendant Crystal Mall Associates Limited Partnership (Crystal Mall) for a refund of claimed rental overpayments. Re-Kap alleges that it is a tenant of Crystal Mall under a certain lease by virtue of two assignments thereof. The principal of Re-Kap was also the principal of the original tenant and the intermediate assignor. Re-Kap further alleges that Crystal Mall has calculated annual rent escalation in accordance with an incorrect interpretation of the lease, resulting in substantial overpayments over about a six-year period
Crystal Mall filed an answer admitting the existence of the lease, and the terms thereof, and denies that it CT Page 153 incorrectly calculated the rent increases.
Each party has filed a motion for summary judgment, with affidavits, supporting memoranda and exhibits, and made oral argument. Each claims that there is no genuine issue of material fact, and each argues for a differing interpretation of the relevant lease language, and that the matter should be resolved by summary judgment.
 I
The standard for considering a motion for summary judgment is well established. Pursuant to Practice Book § 384, summary judgment "shall be rendered forthwith if the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law". The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all the material facts which entitle him to judgment as a matter of law. Suarez v. Dickmont PlasticsCorp. , 229 Conn. 99, 105 (1994); D.H.R. Construction Co. v.Donnelly, 180 Conn. 430, 434 (1980).
"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party . . . the test is whether a party would be entitled to a directed verdict on the same facts." (Citations omitted; internal quotation marks omitted.) Connell v. Colwell,214 Conn. 242, 246-47 (1990).
Ordinarily, summary judgment is inappropriate "where the inferences that the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions". United Oil Co. v. Urban Development Corporation,158 Conn. 364, 376 (1969).
However, "Where there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." Bank of BostonConnecticut v. Schlesinger, 220 Conn. 152, 158, 595 A.2d 872
(1991). It is evident that the lease contains definitive contract language and the court may interpret the lease as a matter of law.
II CT Page 154
The sole issue before the court is the interpretation of Article I, Section 1.1(f), of the lease entered into on May 24, 1983, which was for a ten-year term.[1]
That lease escalation clause, Article I, Section 1.1(f), provides, in relevant part:
 (f) Minimum Rent Payment: For and with respect to the first and second twelve (12) calendar month periods of the terms of this lease . . ., immediately following the commencement date, at the rate of $18,000 per annum payable at the rate of . . . $1,500 per month. . . .
 For and with respect to the third and fourth calendar month periods, . . . at the rate of $20,000 per annum payable at the rate of . . . $1,666.67 per calendar month. . . .
 For and with respect to the fifth and sixth twelve (12) calendar month periods, at the rate of $22,000 per annum. . . .
 For and with respect to the seventh and eighth twelve (12) calendar month periods, at the rate of $24,000 per annum. . . .
 For and with respect to the ninth and tenth twelve (12) calendar month periods, at the rate of $26,000 per annum. . . .
 Minimum rent for the term of this lease shall be subject to escalation as set forth hereinbelow in accordance with changes in the Price Index (as hereinafter defined).
 The level of the Price Index as of the Commencement Date shall be the "Base Index". The Base Index shall be compared to the level of the Price Index at the expiration of the first full year of the term of this lease and at the expiration of each subsequent full year during the term of this lease. If the Price Index at the expiration of the first full year of the term CT Page 155 of this lease, and/or at the expiration of any subsequent full year during the term of this lease, shall be higher than the Base Index, then the rate at which minimum rent is payable hereunder for the then ensuing full year shall be increased over the initial rate specified in this Section 1.1 to the same percentage extent as such increase in the Price Index as of the expiration of the applicable full year; but in no event at any time during the term of this lease shall the rate at which minimum rent is payable under this lease be less than the rate at which minimum rent was payable for the then immediately prior full year. As an illustration only:
 If the Price Index as of the expiration of the first full year of the term of this lease (or at the expiration of any subsequent full year during the term hereof) shall have increased twenty-five (25%) percent over the Base Index, then the minimum monthly rent for and with respect to the ensuing full year shall be increased by 25%, or $375 over the $1,500 initial monthly rate, to $1,875 per month.
In addition to the minimum rent, the lease provided that the tenant also pay its proportionate share of real estate taxes, common area maintenance, sprinkler and HVAC charges.
Re-Kap basically claims that the landlord incorrectly added the increment determined by the price index calculation to the minimum rent then applicable for the year of calculation. Rather, Re-Kap claims that the increment should have been added to the sum of $18,000 which was the minimum rent during the first year of the lease. Re-Kap claims, therefore, that it was overcharged and overpaid the sum of $42,775.40. Crystal Mall claims that it calculated the annual escalator increments pursuant to paragraph 1.1(f) of the lease, and properly added them to the then applicable minimum rent.
As can be seen, the parties do not dispute the indices used or the mathematical computations. They only dispute which rental amount the escalator increment should be added to.
For example, in the sixth year of the lease, Crystal CT Page 156 Mall added the escalator amount of $3,439.74 to the then applicable minimum rent of $22,000, for a total minimum rent of $25,439.74. Under Re-Kap's proposed computation method, the escalator amount of $3,439.74 would be added to the first year's $18,000 minimum rent, for a rental of $21,439.94, less than the $22,000 `minimum rent' for that year.
To more readily visualize the differences in the computations, they may be charted:
Crystal Mall — Sixth Lease Year
$18,000 x (multiplier) = $3,439.74 + $22,000 = $25,439.74
Re-Kap — Sixth Lease Year
$18,000 x (multiplier) = $3,439.74 + $18,000 = $21,439.94
A review of the calculations furnished in the plaintiff's memorandum dated September 28, 1994, from the fourth through tenth years of the lease, reveals that if the escalator increment were added to the $18,000 first year's rent, as the plaintiff maintains, the total derived would be always less than the specified minimum rent for that year. This result would be contrary to and inconsistent with the express language in the lease. See Part V of this memorandum, infra.
The court agrees that the pleadings, affidavits and exhibits establish that there is no genuine issue as to any material fact, that the case involves the interpretation of certain provisions of a lease, and that one of the moving parties is entitled to summary judgment as a matter of law.
 IV
"Under well established rules of construction, any ambiguity in the terms of [a contract] must be construed [against the drafter]. . . . This rule of construction may [not be] applied, however, unless the policy terms are indeed ambiguous. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Citations omitted; internal quotation marks omitted.) Stephenv. Pennsylvania General Ins. Co. 224 Conn. 758, 763-64 (1993). CT Page 157 "In determining the meaning and effect of the uncontroverted language in the lease, the inquiry must focus on the intention expressed in the lease and not on what intention existed in the minds of the parties. . . . Therefore, [t]he controlling factor is the intent expressed in the lease, not the intent which the parties may have had or which the court believes they ought to have had." (Citations omitted; internal quotation marks omitted.) Water Way Properties v. Colt's Mfg. Co., 230 Conn. 660,666 (1994). "Where the parties have reduced their agreement to a writing, we have stated that the intent of the parties is to be ascertained by a fair and reasonable construction of the written words and that the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language is clear and unambiguous, the contract is to be given effect according to its terms." (Internal quotation marks omitted.) Konover Development Corp.v. Zeller, 228 Conn. 206, 233 (1994).
"A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity and words do not become ambiguous simply because lawyers or laymen contend for different meanings." (Internal quotation marks omitted.) Bernard v. Bernard, 214 Conn. 99, 110 (1990). "A contract is to be construed as a whole and all relevant provisions will be construed together." Id at 109. "It is not within the power of the courts to create new and different agreements." Bank of Boston Connecticut v. Schlesinger, supra,220 Conn. 159.
A lease is a contract. Welk v. Bidwell, 136 Conn. 603,606 (1950). In its construction, three elementary principles must be kept continuously in mind: (1) the intention of the parties is controlling and must be gathered from the language of the lease in the light of the circumstances surrounding the parties at the execution of the instrument; (2) the language must be given its ordinary meaning unless a technical or special meaning is clearly intended; (3) the lease must be construed as a whole and in such a manner as to give effect to every provision, if reasonably possible. . . . It has been established that a party is entitled to rely on its written contract as the final integration of its rights and duties. (Citations omitted; internal quotation marks omitted.) PapaGino's of America v. Broadmanor Assoc., 5 Conn. App. 532, 537
(1985). CT Page 158
To reiterate, the disputed language reads, in pertinent part, "If the Price Index at the expiration of the first full year of the term of this lease, and/or at the expiration of any subsequent full year during the term of this lease, shall be higher than the Base Index, then the rate at which minimum rentis payable hereunder for the then ensuing full year shall beincreased over the initial rate specified in this Section 1.1
to the same percentage extent as such increase in the Price Index as of the expiration of the applicable full year". (Emphasis added.) The Price Index (CPI-U) was higher than the Base Index (August, 1984 CPI-U) of 314.50 in each year of the lease. Consequently, the first clause of the disputed sentence (escalation contingency) is not at issue, and the minimum rent was recomputed by the landlord in each year after the first lease year. The dispute is really over which minimum rent amount the escalation increment should have been added to.
Re-Kap argues that `initial rate' refers to the first year's minimum rent of $18,000 and that the escalation multiplier must be applied to the $18,000, and the increment derived added to it. Crystal Mall argues that `initial rate' must be read in light of the entire sentence and that `initial rate specified in this section 1.1' refers to the current year's minimum rent, which is supported by the language "the rate at which minimum rent is payable hereunder for the thenensuing full year", and argues that the increment derived must be added to the minimum rent applicable to the year of computation. Giving the language its normal and usual meaning, it is evident that the phrase "for the then ensuing full year" is a prepositional phrase which modifies and acts to restrict the meaning of the antecedent noun `rent'. It also follows that the phrase "at which minimum rent is payable" is also a prepositional phrase which modifies and operates to restrict the meaning of the antecedent noun `rate'. Moreover, `over the initial rate specified in this Section 1.1' refers to the antecedent noun in the sentence which is `rate'". This unambiguous language supports the definition of `minimum rent' for the year in question as the sum determined by applying the escalator multiplier to the specified minimum rent for that year and adding the increment derived thereto. Therefore, I conclude that the escalation multiplier should have been applied to the applicable year's minimum rent, and the result added to it, a construction of the lease not contended for by either party. CT Page 159
Nevertheless, "[t]he meaning of the terms of a contract can also be shown by the conduct of the parties to the contract". Ruscito v. F-Dyne Electronics Co., 177 Conn. 149
(1979). "The courts do not favor construction in derogation of the course of conduct of the parties." Papa Gino's of Americav. Broadmanor Assoc., supra, 5 Conn. App. 537. It is undisputed that Crystal Mall has consistently used the first year's minimum rent of $18,000 when calculating the amount of the CPI-U escalation. It then added the amount derived to the then specified minimum rent. It is also undisputed Re-Kap consistently paid that rent as so calculated without question or argument for about ten years. Despite the unambiguous language of the lease, as established by their conduct, both parties obviously intended for the escalation multiplier to be annually applied to the first year's minimum rent of $18,000, and the increment derived to be added to the then applicable minimum rent.
 V
Re-Kap argues further that the rent calculation must be the alternative. Re-Kap's argument is that the Mall is entitled to the higher of (1) the current year's minimum rent or (2) the first year's minimum rent increased at the same rate that the CPI-U has increased. Re-Kap's strained construction is not reasonable in view of the unambiguous language used by the parties. The contractual language is structured as an `if . . . then' clause; this is a contingent escalation clause and not an alternative escalation clause. An increase in the CPI-U is a condition precedent to increasing the otherwise yearly minimum rent, otherwise the last year's minimum rent is payable. Nowhere in Section 1.1(f) is an alternative method of determining yearly rent expressed. "Terms cannot be added to a contract by interpretation." Ruscito v. F-Dyne ElectronicsCo., supra, 177 Conn. 170. If the parties desired to provide for such an alternative clause, they could have easily done so. Re-Kap has not met its burden of showing that it is entitled to judgment as a matter of law, and its claims must fail.
 VI
I conclude that no reasonable construction of the lease supports the plaintiff's claims. Nor are they supported by the continuous course of dealing between the parties for almost ten CT Page 160 years. Accordingly, there is no genuine issue of material fact in dispute between the parties and summary judgment is appropriate.
For the reasons stated, the plaintiff's motion for summary judgment is denied, and the defendant's motion for summary judgment is granted.
Teller, J.