**Godwin GRUBER, P.C., f/k/a Godwin White & Gruber, P.C., Plaintiff,**

**v.**

**Brian C. DEUSCHLE, Chartered and Deuschle and Associates, PA, Defendants.**

**No. CIV.A.3:00–CV–0017–L.**

United States District Court, N.D. Texas, Dallas Division.

May 7, 2003.

Steven Ray Baggett, Thompson & Knight, Dallas, TX, Brian C. Deuschle, Christopher D. Hale, Law Office of Brian C. Deuschle, Fort Lauderdale, FL, Jeffrey A. Miller, Law Office of Jeffrey A. Miller, Boca Raton, FL, for defendants.

G. Michael Gruber, Brian N. Hail, Robert C. Wiegand, Godwin, Gruber, Dallas, TX, for plaintiff.

## MEMORANDUM OPINION AND ORDER

LINDSAY, District Judge.

### I. Procedural Background

On December 13, 1999, Plaintiff Godwin Gruber, P.C., f/k/a Godwin White and Gruber, P.C. ("Plaintiff" or "Godwin Gruber") commenced this action in state court against Brian C. Deuschle;[1] Deuschle's law firm, Deuschle & Associates, P.A. ("Deuschle & Associates"); and Brian C. Deuschle, Chartered, an entity created by Deuschle (collectively "Defendants"). On January 5, 2000, Defendants removed the action to this court based on complete diversity of citizenship. In its Second Amended Complaint, Plaintiff alleged claims for breach of contract, fraud, tortious interference with an existing contract, conspiracy, and quantum meruit, seeking $233,333.33 in damages in addition to attorney's fees and exemplary damages. On February 6, 2002, Plaintiff filed a motion for summary judgment with respect to its breach of contract claim. In response, Defendants contended that Plaintiff was not entitled to summary judgment because: (1) the parties' contract was void as against Florida public policy; and (2) Plaintiff failed to perform any of the required services under the contract.[2] On August 9, 2002, the court denied Plaintiff's Motion for Summary Judgment after determining that Defendants had raised a material issue of fact regarding Plaintiff's performance under the contract. From January 21, 2003 to January 23, 2003, the court conducted a three-day bench trial on Plaintiff's claims. The parties filed Proposed Findings of Fact and Conclusions of Law on March 6, 2003.[3] The court now rules in favor of Plaintiff on its breach of contract claim and in favor of Defendants on Plaintiff's remaining claims. The court makes the following findings of fact and conclusions of law as required by Fed. R.Civ.P. 52(a).

1. On October 29, 2001, Brian C. Deuschle ("Deuschle") was dismissed from the lawsuit by stipulation of the parties after he filed for bankruptcy.

2. With respect to Defendants' contention that Plaintiff did not perform under the contract, Defendants asserted that any work Plaintiff did in relation to the Florida lawsuit was done under a separate contract for separate consideration. They attached the affidavit of Robert L. Lambert, a party to the Florida litigation, as support for this contention. Because Defendants had not previously asserted this particular defense, the court granted Plaintiff leave to depose Mr. Lambert on this issue, and by order dated July 18, 2002, the court granted Plaintiff leave to supplement the summary judgment record with excerpts from Mr. Lambert's deposition testimony. Also in the July 18, 2002 order, the court granted Defendants leave to file a response to Plaintiff's supplemental summary judgment materials. Plaintiff filed the supplemental materials on July 22, 2002, and Defendants filed their response on July 26, 2002.

3. For some reason, Plaintiff's Proposed Findings of Fact and Conclusions of Law submitted on March 6, 2003 was file stamped "received" rather than "filed." **Accordingly, the clerk of the court is directed to file Plaintiff's Proposed Findings of Fact and Conclusions of Law with a file date of March 6, 2003.**

## II. *Findings of Fact* [4]

This litigation stems from a contract dispute between two law firms over payment of attorney's fees. Plaintiff Godwin Gruber, a law firm located in Dallas, Texas, contends that the law firm of Deuschle & Associates, a Florida law firm, breached a written contract to pay Godwin Gruber attorney's fees for work it performed in conjunction with Deuschle & Associates' representation of plaintiffs in a Florida lawsuit styled *Robert F. Lambert, et al. v. Blockbuster Entertainment Corporation, et al.* ("the Florida lawsuit").

Prior to entering the consulting agreement at issue in this case, Robert F. Lambert ("Lambert"), one of the plaintiffs in the Florida lawsuit, signed a written agreement retaining attorneys G. Michael Gruber ("Gruber") and Brian N. Hail ("Hail"), who at that time were with the Dallas law firm of Cowles & Thompson, P.C. ("Cowles & Thompson"). This agreement, dated March 17, 1995, limited Gruber and Hail's representation to drafting a complaint and performing the research and investigation necessary to do so. The agreement provided that Gruber and Hail's fees for this work would not exceed $5,000. Gruber and Hail completed the representation governed by the March 17, 1995 agreement to Lambert's satisfaction, and their representation pursuant to the March 17, 1995 agreement ended in May of 1995.

By agreement dated May 25, 1995 ("Fee Agreement"), Lambert and American Maritime Officers Union ("the Union"), another plaintiff in the Florida lawsuit, retained Deuschle & Associates to serve as primary counsel in the Florida lawsuit against Blockbuster.[5] Lambert, however, wanted Gruber and Hail to continue to be involved in the case. On May 22, 1995, Lambert and Deuschle flew to Dallas and met with Gruber and Hail to discuss the terms of a proposed agreement whereby Gruber and Hail, through Cowles & Thompson, would consult and assist in the Florida action. Deuschle memorialized what was discussed at the May 22 meeting and sent Gruber the following written offer dated May 25, 1995:

> Consistent with our conversation, you will find enclosed a co[p]y of the proposed letter of engagement by the Plaintiffs, which I have forwarded to each of them for signature. Based upon phone conversations, I anticipate the letter will be signed and returned to me by Tuesday, May 30, 1995. You have disclosed to me that because of [a] pre-existing contractual commitment, neither you nor any member of your firm will appear of record as counsel in this matter. However, you have agreed to consult with and assist our firm in prosecuting the

---

4. The facts contained herein are either undisputed or the court has made the finding based on the credibility or believability of each witness. In doing so, the court considered all of the circumstances under which each witness testified, including: the relationship of the witness to Plaintiff or Defendants; the interest, if any, the witness had in the outcome of the case; the witness's appearance, demeanor, and manner of testifying while on the witness stand; the witness's apparent candor and fairness, or the lack thereof; the reasonableness or unreasonableness of the witness's testimony; the opportunity of the witness to observe or acquire knowledge concerning the facts to which he or she testified; the extent to which the witness was contradicted or supported by other credible evidence; and whether such contradiction related to an important factor in the case or some minor or unimportant detail. When necessary, the court comments on the credibility of a witness or the weight to be given a witness's testimony.

5. Although the Fee Agreement was dated May 25, 1995, the parties to the agreement did not sign it until June 14, 1995.

matter to the extent that such consultation and assistance does not violate pre-existing obligations with respect to attorney/client privilege or any rule of ethical conduct. As compensation for your consultation and assistance, I have indicated that we will share with you the contingent fee in this matter to the extent of one-third (1/3rd) thereof. Please confirm this arrangement by executing the acceptance set forth at the bottom of this letter on behalf of your firm.

On June 22, 1995, Gruber accepted Deuschle's letter offer on behalf of Cowles & Thompson by signing or executing the acceptance at the bottom of the letter as requested by Deuschle.[6]

The May 25, 1995 Fee Agreement referenced in and attached to the Consulting Agreement states that Deuschle "will be the primary attorney assigned to this matter." Regarding Deuschle's and Gruber's respective roles in the suit and their compensation, the Fee Agreement provides that the law firm of Deuschle & Associates "[h]as engaged, as consulting counsel, in this matter, the firm of Cowles & Thompson ... and has agreed to pay such counsel one-third (1/3rd) of any contingency fee received by [Deuschle & Associates]." The Fee Agreement further provided that Deuschle & Associates would receive as a contingency fee "[f]orty percent (40%) of gross recovery regardless of amount and regardless of whether secured by settlement or collection of final judgment ...." All costs and expenses of the litigation were to be paid by the Union under the May 25, 1995 Fee Agreement. In addition, Plaintiff was to receive one-third of Defendants' contingency fee or one-third of Deuschle & Associates' 40% of the gross recovery in the case. As a result of the Fee Agreement and Consulting Agreement, Deuschle and Lambert understood

**6.** Gruber and Hail left Cowles & Thompson and became affiliated with Godwin Gruber in March of 1999. The right to receive any fee in connection with the Consulting Agreement was subsequently transferred or assigned to Godwin Gruber, and Lambert signed an authorization allowing Cowles & Thompson to deliver the client file to Gruber on January 31, 1996. Defendants suggest in their Proposed Findings of Fact that the transfer or assignment of the right was ineffective because: (1) Gruber and Hail notified Lambert when they left Cowles & Thompson but failed to notify Defendants; and (2) neither Gruber nor Hail obtained Defendants' consent to transfer the Consulting Agreement to Godwin Gruber. Because the parties stipulated in their Joint Pretrial Order that "[t]he right to receive any fee in connection with the [Consulting Agreement] has been properly assigned to Godwin Gruber, P.C.," the court considers this a non-issue and determines that the transfer or assignment of the right to any fee obtained in connection with the Consulting Agreement was valid and effective. Moreover, the record shows that Defendants were in fact notified that Hail and Gruber had left Cowles & Thompson. In a letter Hail faxed to Deuschle after the case settled, Hail ex-plained that he and Gruber had made two firm changes since the two agreements were executed. Hail further explained that on January 29, 1996, Gruber and Cowles & Thompson signed a Memorandum of Understanding assigning the Lambert case to Gruber, who along with Hail, brought the case to their new firm Kane, Russell, Coleman & Logan. Hail also explained that on March 1, 1999, Gruber and Hail joined the firm of Godwin Gruber, and that Michael Logan authorized in writing payment to Godwin Gruber any settlement proceeds in the Florida lawsuit. Three days later, Deuschle responded in writing to Hail's letter, asserting that "our firm [Brian C. Deuschle, Chartered] is not prepared to divide the contingent fee in this matter with your firm or any of the successor firms with whom you have been affiliated." To the extent that Defendants attempt to use Plaintiff's failure to notify Defendants as an excuse for their failure to pay Plaintiff under the agreement, the court finds Defendants' explanation disingenuous, and, because the parties stipulated that the transfer was proper, trial testimony regarding Plaintiff's failure to obtain Defendants' consent or notify Defendants is of no moment.

that Deuschle would be performing most of the work on the case and that Cowles & Thompson's role would be limited to consulting and assisting.

Neither the Fee Agreement nor the Consulting Agreement define the terms "consult" or "assist"; however, when asked in his deposition, Deuschle stated that consult and assist meant that the firm of Cowles & Thompson or Gruber and Hail, as appropriate, would render services in the nature of: (1) consulting on the theory of the case; (2) providing memoranda of law; (3) providing background, strategy, and witness information; (4) attending depositions and providing information with respect to depositions; and providing other advice regarding difficult legal issues that may arise. At trial, Dueschle reluctantly acknowledged that Plaintiff had done the following work in conjunction with the Florida lawsuit: (1) prepared a complaint;[7] (2) prepared of a memorandum of law regarding theories of law that was requested by Deuschle; (3) provided depositions and transcripts and copies of government investigations in response to Deuschle's request for background information on the Blockbuster defendants; (4) Hail met with Deuschle to discuss trial strategy in June of 1996; (5) Hail flew to Florida to attend a deposition but was requested to leave; (6) Hail attended at least one deposition; (7) Hail assisted in finding expert witnesses and drafted a letter of engagement from KPMG Peat Marwick, LLP ("Marwick") related to potential expert testimony, and on April 2, 1996, Hail sent Deuschle a draft of the proposed fee agreement between Marwick and Deuschle for his acceptance; (8) Hail attended a scheduled meeting that Deuschle failed to appear at; (9) Hail attended the mediation of the case and advised Lambert regarding settlement; (10) and Gruber and Hail spoke with Lambert on numerous occasions and sent various correspondence via mail and facsimile in which they advised him about the case, including settlement strategy.

On or about November 5, 1999, the Florida lawsuit was settled for $1,750,000. In a letter dated December 10, 1999, Hail requested a check payable to Godwin Gruber in the amount of $233,375 or one-third of 40% of the settlement amount pursuant to the May 25, 1995 Consulting Agreement and Fee Agreement. On December 13, 1999, Deuschle responded, confirming that the case had settled for $1,750,000. Deuschle, however, indicated that Hail's calculation as to the amount owed Plaintiff was wrong, because the Fee Agreement had been modified to increase the net proceeds to Lambert, the client. Notwithstanding the substantial fee reduction, Deuschle stated that "we will not advance any fees to your law firm" because: (1) "your firm performed no consulting services nor did you contribute any material assistance to the conduct of the cause"; and (2) the parties' contingency agreement is void under Florida law because Plaintiff, "by is [sic] own election, did not assume co-equal responsibility in the cause . . . ." This was the first time Defendants claimed that agreement was void as against public policy. It was also the first time Plaintiff learned that the terms of the original Fee Agreement, which were presented as part of Deuschle & Associates' letter offer to Plaintiff, had been modified.

The Fee Agreement, upon which the Consulting Agreement was based, was ac-

---

7. The court finds that the complaint was prepared pursuant to the March 17, 1995 flat fee agreement before the parties' entered into the May 25, 1996 Consulting Agreement. The court therefore does not consider it as work performed in conjunction with the Consulting Agreement at issue here.

tually modified three times without Gruber or Hail's knowledge. The first modification to the Fee Agreement was made on May 30, 1995, shortly after Deuschle sent the May 25, 1995 written offer to Gruber or Cowles & Thompson but before Gruber had accepted. In the May 30 agreement to modify the Fee Agreement, Deuschle & Associates, Lambert, and the Union limited the amount of costs and expenses the Union would have to pay in the Florida lawsuit to $100,000. On June 22, 1995, Deuschle & Associates, Lambert, and the Union entered into a supplemental agreement to reimburse the Union for all costs advanced by it by deducting those costs from the settlement or judgment proceeds before paying Deuschle & Associates its 40% contingency fee. By entering this agreement to deduct costs before calculating the 40% contingency fee, Deuschle, Lambert, and the Union decreased the fee Deuschle & Associates was entitled to recover. On October 7, 1999, one month before the case settled, Brian C. Deuschle, Chartered entered into an agreement with Lambert to reduce Brian C. Deuschle, Chartered's [8] fee to a flat $425,000, further decreasing Deuschle & Associates' contingency fee.

On December 13, 1999, Plaintiff filed suit against Defendants in the 193rd Judicial District Court of Dallas County, Texas to recover the fees due under the parties' written agreement and reasonable attorney's fees pursuant to Tex. Civ. Prac. & Rem.Code § 38.002. After the case was removed to this court, Plaintiff filed a Second Amended Complaint, asserting claims for breach of contract, fraud, tortious interference with existing contract, conspira-cy, and quantum meruit, and seeking $233,333.33 in damages to be placed in a constructive trust in addition to attorney's fees and exemplary damages.

## III. Conclusions of Law [9]

### A. Choice of Law

As a preliminary matter, the court must determine what substantive law governs this case. The parties stipulated in open court that Texas law applies to Plaintiff's tort claims. See Tr., Vol. 3 at 144–145. The parties disagree, however, which law should apply to Plaintiff's breach of contract claim. Plaintiff urges the application of Texas law to its contractual claim, whereas Defendants argue that Florida law is controlling. Specifically, Defendants contend that the Professional Rules Regulating the Florida Bar regarding contingency fee agreements are applicable.

In a diversity case such as this, a federal court is required to follow the choice of law rules of the state in which it sits. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Alberto v. Diversified Group, Inc.*, 55 F.3d 201, 203 (5th Cir.1995). This court therefore applies Texas choice of law principles to determine whether Texas or Florida law should apply to Plaintiff's breach of contract claim. Texas has adopted the "most significant relationship" test of the Restatement (Second) of Conflict of Laws in contract cases. *Access Telecom, Inc. v. MCI Telecommunications Corp.*, 197 F.3d 694, 705 (5th Cir.1999), *cert. denied*, 531 U.S. 917, 121 S.Ct. 275, 292, 148 L.Ed.2d 200 (2000) (citing *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 420–21 (Tex.

---

**8.** Brian C. Deuschle, Chartered was formed on February 2, 1998 and assumed the representation of the plaintiffs in the Florida lawsuit after it was formed.

**9.** To the extent any conclusion of law is deemed to be a finding of fact, it is adopted as such; and likewise, any finding of fact that is deemed to be a conclusion of law is so adopted.

1984)). Under the most significant relationship test, courts consider (1) the place of the contract; (2) the place where the contract was negotiated; (3) the location of the subject matter of the contract; and (4) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *SnyderGeneral Corp. v. Great Am. Ins. Co.*, 928 F.Supp. 674, 677 (N.D.Tex.1996), *aff'd*, 133 F.3d 373 (5th Cir.1998) (citing *Maxus Exploration Co. v. Moran Bros., Inc.*, 817 S.W.2d 50, 53 (Tex. 1991) and Restatement (Second) of Conflict of Laws § 188 (1971)).

 Consideration of these factors in the instant case leads the court to conclude that Texas is the state having the most significant relationship to the consultation agreement. Deuschle and Lambert traveled to Texas to discuss and negotiate the terms of the agreement in Gruber's Dallas law office. The discussion that took place at this meeting became the basis for the May 25, 1995 Consulting and Fee Agreements drafted by Deuschle. Gruber accepted Deuschle's letter offer by signing the document in question in Texas.[10] Deuschle is a Florida citizen and Defendants' place of business is in Florida while Gruber and Hail are Texas citizens and the law firms they were associated with, including Godwin Gruber, used Texas as their place of business. This factor is therefore irrelevant. The subject matter of the contract was the Florida litigation; however, the agreement makes clear that Plaintiff's role in the case would be limited to consultation and assistance and that Plaintiff would not be counsel of record. Consequently, Plaintiff was not required to play an active role in the Florida litigation and performed many of its obligations under the contract in Texas. The court therefore concludes that Texas has the most significant relationship to the Consultation Agreement in question and Texas law applies to Plaintiff's breach of contract claim. Having concluded that Texas law applies, the court need not address Defendants' argument that the parties' agreement is void as against Florida public policy. The court, nevertheless, notes that Defendants acknowledged that even if the court were to apply Florida law, the result would likely be the same. *See id.* It would be highly inequitable at this point to allow Defendants to avoid their contractual obligation to Plaintiff by hiding behind the shield of public policy after they and their client have benefited from Plaintiff's legal services and received a handsome settlement. Moreover, as Deuschle was the drafter of both the Consulting and Fee Agreements, whether under Texas law or Florida law, the court construes the agreements against Defendants.

## B. Breach of Contract

In its Proposed Findings of Fact and Conclusions of Law, Plaintiff urges that the May 25, 1995 agreement signed by Gruber on June 22, 1995 is a valid and enforceable contract; that the work it performed satisfied its contractual obligations

---

**10.** Defendants contend in their Memorandum on Choice of Law that Florida was the place of acceptance because the "Letter Agreement sued upon required the acceptance of the Plaintiff and in order for the acceptance to be effective, it must be communicated [and the] communication in the instant case was the return of the signed Letter Agreement in to the hands of the Defendant, Deuschle & Associates, P.A., in Florida." The court disagrees. Regarding the manner of acceptance, Deuschle's letter offer specifically instructed Gruber to "confirm this arrangement by executing the acceptance set forth at the bottom of this letter on behalf of your firm." Nowhere is it stated that Plaintiff's acceptance will not be effective until Plaintiff communicates its acceptance by returning the signed letter agreement to Deuschle & Associates. Acceptance was therefore complete when Gruber signed the document on June 22, 1995 in Texas.

under the contract; and Defendants breached the contract when it refused to pay Plaintiff the amount owed to them. Defendants, on the other hand, contend that Plaintiff did not fulfill its obligations under the contract and Defendants were therefore not required to pay Plaintiff any fee. According to Defendants, Plaintiff ceased providing consultation and assistance to Defendants in March of 1996 and did not perform any services for Defendants between that time and the time the Florida litigation settled in November of 1999. Alternatively, Defendants assert that if Plaintiff is entitled to payment for its services, it should be limited to partial payment or payment only for those services it rendered.

"The elements in a suit for breach of contract are: (1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of that breach." *Aquila Southwest Pipeline, Inc. v. Harmony Exploration, Inc.*, 48 S.W.3d 225, 235 (Tex. App.-San Antonio 2001, pet. denied). The parties stipulated in the Joint Pretrial Order that "on or about the 25th of May, 1995, COWLES & THOMPSON, P.C. and Defendant DEUSCHLE & ASSOCIATES, P.A., entered into a letter agreement [the Consulting Agreement]," whereby Plaintiff agreed to provide consulting services to Deuschle & Associates in connection with the Florida litigation. The court therefore concludes that the first element, a valid contract, is satisfied. The existence of the remaining elements is disputed. Specifically, the parties dispute: (1) whether Plaintiff performed as required by the contract; (2) whether Plaintiff was damaged; and (3) the amount, if any, Plaintiff is entitled to under the contract for its consulting services.

### 1. Plaintiff's Performance Under the Consulting Agreement

When questioned at trial regarding Plaintiff's performance, Deuschle acknowledged that Plaintiff had performed all of the work previously mentioned. He, nevertheless, maintains that Plaintiff failed to fulfill its obligation under the contract. From what the court can surmise from the testimony adduced at trial, the Joint Pretrial Order, Defendants' Proposed Findings of Fact and Conclusions of Law, and other evidence in the record, Defendants contend that Plaintiff failed to fulfill its obligation under the contract because: (1) the complaint and exhibits prepared under the Plaintiff's flat fee agreement with Lambert do not constitute performance under the Consulting Agreement with Defendants; (2) the memorandum prepared by Plaintiff was unsatisfactory because Deuschle had to make some changes; (3) Gruber sent no correspondence to Defendants and had no meetings or conferences with Defendants; (4) Gruber and Hail advised Lambert directly regarding the Florida litigation and directed correspondence to Lambert without first consulting with or informing Defendants and without providing Defendants with a copy of the correspondence; (5) Hail attended the deposition of Wayne Huizenga and one of two mediation sessions without first consulting with or informing Defendants; (6) "Hail did not consider it as important to inform the Defendants of what comment and advice he was independently providing the Clients"; (7) during the pendency of the lawsuit, Hail visited and stayed at the Lambert's home in Florida and directly conferred with Lambert regarding the case; (8) neither Gruber nor Hail attended any hearings in the Florida litigation; (9) all of the depositions in Florida were handled by Defendants; (10) Gruber billed no hours from March 8, 1999 to October 6, 1999 and Hail billed only 11 hours and 24

minutes during this time period in the months just prior to the settlement of the Florida lawsuit; (11) Plaintiff had minimum contact with Defendants as the majority of billing record entries for March 7, 1999 through October 6, 1999 involve analysis of material, conversations with Lambert, and travel to Florida; and (12) neither Gruber nor Hail had any involvement in preparing for the hearing on punitive damages and attended no hearings.

■ The court concludes that a majority of Defendants' contentions regarding Plaintiff's performance of its obligations under the Consulting Agreement reflects nothing more than hurt feelings that do not negate the overwhelming amount of evidence of Plaintiff's performance presented in the form of testimony and exhibits. The evidence, including Deuschle's own testimony, clearly shows that Plaintiff actively participated in the prosecution of this case to the extent required by the parties Consulting Agreement and that the work performed benefited the client and therefore assisted Defendants. Neither the Consulting Agreement nor the Fee Agreement requires Plaintiff to consult with or inform Defendants, the counsel of record, before advising Lambert regarding the lawsuit. Perhaps as a professional courtesy to Defendants, Plaintiff could have and should have done a better job at keeping Defendants "in the loop," but this was certainly not required by the parties' agreement.

Moreover, Deuschle acknowledged at trial, albeit reluctantly, that Plaintiff's duties included communicating with the clients and in order for Gruber and Hail to fulfill their duties by assisting Defendants with trial strategy, they needed to gauge the emotional involvement of the parties, including Lambert. He further agreed that the best way for Gruber and Hail to gauge the emotional involvement of Lambert was to contact him directly. The

correspondence between Lambert and Plaintiff also indicates that much of the independent advice Plaintiff gave Lambert was in response to his request for advice, particularly during settlement negotiations. Lambert, no doubt, valued Plaintiff's advice, because Gruber and Hail had won a previous lawsuit against Blockbuster and a huge settlement. Moreover, contrary to Defendants' assertions, the exchange of letters between Dueschle and Lambert and Plaintiff and Lambert shows that Plaintiff was instrumental in increasing the settlement amount by more than 100%. While Deuschle urged Lambert to take the first offer of $500,000, Gruber and Hail recommended on more than one occasion that Lambert be patient, because Gruber and Hail both believed Blockbuster would be willing to pay much more, but would only do so at the last minute when a trial date was impending. As a result, the case was finally settled for $1,750,000.

As for Defendants' remaining contentions, the court already disposed of its contention that evidence presented regarding the complaint prepared by Plaintiff was prepared under the prior flat fee agreement, and this without more, is insufficient to negate the other evidence of work Plaintiff performed. Similarly, Deuschle's conclusory statement at trial that the work performed by Plaintiff was unsatisfactory is insufficient. Other than his testimony that he had to make a few changes to a memorandum of law prepared by Plaintiff, there is nothing in the record to support the contention and because much of his testimony at trial contradicts his deposition testimony and the physical evidence in the record, the court gives little, if any, weight to his testimony regarding Plaintiff's performance.

Finally, Defendants' contention that Gruber billed few hours during the case is unavailing. Both the Fee Agreement and

Consulting Agreement engaged the firm of Cowles & Thompson, not Michael Gruber personally, and according to Defendants' own calculations, Gruber and Hail together billed no less than 267 hours in conjunction with the Florida lawsuit. It appears that Dueschle, in hindsight, may believe that Plaintiff's compensation under the agreements is unfair in light of the firms' respective roles in the Florida litigation; however, whether the agreement, in hindsight, appears to favor one party over another is not an issue the court is concerned with in interpreting the parties' agreement.

Neither party contends that the agreements are ambiguous and although consulting and assisting are not defined in the agreement, the court finds no ambiguity when the terms are given their plain, ordinary, and generally accepted meaning.[11] The court must therefore enforce the parties' agreement as written. *Western Reserve Life Ins. v. Meadows,* 152 Tex. 559, 261 S.W.2d 554, 557 (1953). Moreover, the parties to these contracts are experienced attorneys and business people, who were free to make their own agreements, and the court has no authority to revise an unambiguous contract to conform with one party's assertions regarding performance. *See Phillips v. Union Bankers Ins. Co.,* 812 S.W.2d 616, 619 (Tex.App.-Dallas 1991, no writ). Accordingly, the court concludes that based on the evidence, Plaintiff fulfilled its obligation of consulting and assisting under the parties' Consulting Agreement and the Fee Agreement to which it refers. Plaintiff are therefore entitled to recover for the services it performed under the parties' agreement.

### 2. Defendants' Breach and Plaintiff's Damages

The court now turns to the issue of whether Defendants breached the parties' agreement. The record reflects that Defendants have failed to pay *any* sum of money to Plaintiff for the services it performed. Since Defendants failed to pay as obligated under the parties' agreement, they are in breach of the agreement. As a direct result of that breach, Plaintiff suffered damages. Having determined that Plaintiff have suffered damages, the court now determines the amount of damages to which Plaintiff is entitled as a result of Defendants' breach. Before determining the amount of Plaintiff's damages, however, the court must first determine whether Defendants' obligation to pay Plaintiff is limited to the parties' Consulting Agreement or extends to both the Consulting Agreement and Fee Agreement. Plaintiff relies on the 40% of gross recovery language in the Fee Agreement although it was not a signatory to that agreement. Defendants, on the other hand, argue that Plaintiff at most is only entitled to one-third of the contingency fee Defendants actually "received." The court must also determine what effect, if any, the modifications to the Fee Agreement had on the Defendants' obligation to pay Plaintiff for the consulting services it performed in conjunction with the Florida lawsuit.

#### a. Incorporation by Reference

Defendants maintain that Plaintiff's recovery is limited to one-third of the contingency fee "received" by Defendants in the Florida litigation rather than one-third of 40% of the gross recovery while at the same time urging in their proposed Find-

---

**11.** The verb "assist" means to give support or aid. Webster's Collegiate Dictionary 70 (10th ed.1997). Similarly, a "consultant" or someone who "consults" is commonly defined in non-legal dictionaries as a person who gives professional advice or services. *Id.* at 248–49.

ings of Fact that the Consulting Agreement did not incorporate by reference the Fee Agreement. This is odd since the "received" language advocated by Defendants is found only in the Fee Agreement.

■ After reviewing both documents, the court concludes that the Consulting Agreement incorporates the Fee Agreement. Both documents were drafted on the same day by the same person— Deuschle. Both agreements refer to the other, and Deuschle obviously thought it was important enough that he even attached copies of each agreement to the other before submitting them to the respective parties for their signatures. Moreover, Deuschle acknowledged at trial that under the parties' original agreement before the Fee Agreement was modified, Plaintiff was entitled to one-third of 40% of the gross recovery. In addition, Hail testified that Plaintiff would not have accepted Deuschle & Associates' offer if it had offered to pay Plaintiff's fees after deducting costs of the suit from the settlement amount. It is therefore only logical to conclude that the Consulting Agreement incorporated by reference the Fee Agreement and was a necessary condition to Gruber accepting Deuschle's letter offer and entering the Consulting Agreement. *See, e.g., Mississippi Power Co. v. N.L.R.B.*, 284 F.3d 605, 623 (5th Cir.2002). As a result, Deuschle & Associates was bound by both the Consulting Agreement and the Fee Agreement as far as its obligation to pay Plaintiff the fee originally agreed upon in the May 25, 1995 agreements. *See Insurance Co. of North America v. Aberdeen Ins. Servs., Inc.*, 253 F.3d 878, 886 (5th Cir.2001).

Defendants contend that its obligation to pay Plaintiff under the May 25, 1995 Fee Agreement is limited to one-third of any

contingency fee "received" by Defendants. Plaintiffs on the other hand, contend that it is entitled to one-third of 40% of the gross recovery. Both of the provisions referred to by the parties are found in the Fee Agreement. When read in isolation, the provision of the Fee Agreement referred to by Defendants does state generally that Defendants agree to pay Plaintiff one-third of any contingency fee received by Deuschle & Associates. When read in the context of the entire agreement, however, it is clear from the specific provision describing Defendants' contingency fee that the amount to be received by Dueschle & Associates was intended to be "[f]orty percent of gross recovery regardless of amount." The court therefore concludes that under the terms of the original Fee Agreement and Consulting Agreement, the parties intended Plaintiff's compensation to be one-third of 40% of the gross recovery. *See Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133–34 (Tex.1994) (in contract interpretation, controlling effect must be given to specific provisions over general provisions). Plaintiffs are therefore entitled to one-third of 40% of the gross recovery or $233,333.33.[12]

### b. Effect of Modifications to Fee Agreement

The parties disagree about the effect, if any, the three modifications to the Fee Agreement had on the Consulting Agreement and the amount of attorney's fees Plaintiff is entitled to receive for the work it performed under the agreement. Defendants contend that the modifications not only changed the method by which Deuschle & Associates' contingency fee would be calculated, but also changed the way Plaintiff's consulting fee would be cal-

---

**12.** The court calculated this amount as follows: $1,750,000 × .40 = $700,000 × .333 = $233,333.33.

culated since the consulting fee was a percentage of the contingency fee.

On the other hand, Plaintiff contends, and the court determines that neither Gruber nor Hail or Cowles & Thompson consented to this modification before entering into the May 25, 1995 agreement. In fact, Plaintiff did not learn about the modifications until after the Florida lawsuit had settled, and Hail testified at trial that Plaintiff would not have entered the May 25, 1995 Consulting Agreement if the agreement had provided that costs would be deducted before the contingency fee was calculated. While Defendants did not need Plaintiff's consent to reduce the contingency fee it would receive under its Fee Agreement with Lambert and the Union, it did not have the power to unilaterally modify the terms of the Consulting Agreement, which incorporated by reference the original Fee Agreement, without Plaintiff's consent. *See Safeway Managing Gen. Agency v. Cooper*, 952 S.W.2d 861, 867 (Tex.App.-Amarillo 1997, no writ) ("[O]ne party may not unilaterally create a binding contract."); *Fubar v. Turner*, 944 S.W.2d 64, 67 (Tex.App.-Texarkana 1997, no writ). The court therefore concludes that none of the modifications to the Fee Agreement affected Defendants' obligation under the Consulting Agreement to pay Plaintiff one-third of the contingency fee, which the court has already determined to be 40% of the gross recovery as provided for in the original Fee Agreement. Consequently, Defendants obligation to Plaintiff under the Consulting Agreement remained the same despite its agreement with Lambert and the Union to receive a reduced amount for its contingency fee. Plaintiff has therefore proved all of the elements of its breach of contract claim and is entitled to $233,333.33 in damages. Having found in favor of Plaintiff on its breach of contract claim, the court need not address Plaintiff's quantum meruit claim, as it was only presented as an alternative theory of recovery.

## C. Fraud

■ As a defense to Plaintiff's fraudulent misrepresentation claim, Defendants contend that Plaintiff may not recover damages for a tort while seeking separate damages for breach of contract. The court disagrees. In *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41 (Tex.1998), the Texas Supreme court held that

> tort damages are recoverable for a fraudulent inducement claim irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract. Allowing the recovery of fraud damages sounding in tort only when a plaintiff suffers an injury that is distinct from the economic losses recoverable under a breach of contract claim is inconsistent with this well-established law, and also ignores the fact that an independent legal duty, separate from the existence of the contract itself, precludes the use of fraud to induce a binding agreement.

*Id.* at 47. Accordingly, the court disapproved of appellate court opinions that had previously held that "tort damages cannot be recovered for a fraudulent inducement claim absent an injury that is distinct from any permissible contractual damages."

■ To establish a claim of fraud, Plaintiff must show that: (1) a false material representation was made; (2) at the time the representation was made, the speaker either knew the representation was false or recklessly made it as a positive assertion despite having no knowledge of the truth; (3) the speaker intended that the other party would rely on the representation; and (5) the other party relied on the

representation and suffered harm as a result. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 524 (Tex.1998). "As a general rule, the failure to perform the terms of a contract is a breach of contract, not a tort. However, when one party enters into a contract with no intention of performing, that misrepresentation may give rise to an action in fraud." *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 597 (Tex.1992), *overruled on other grounds by Subaru of America, Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 225 (2002). Plaintiff thus had to present evidence that Defendants made representations with the intent to deceive and with no intention of performing as represented. *Formosa*, 960 S.W.2d at 48.

Plaintiff alleges that Defendants never intended to pay Plaintiff one-third of 40% percent of the gross recovery. For support, Plaintiff points to the two modifications to the Fee Agreement that occurred after Deuschle forwarded to Plaintiff for its acceptance of the May 25, 1995 Consulting Agreement and Fee Agreement. Plaintiff contends that these modifications were made without Plaintiff's consent, and that Defendants failed to disclose that the agreement had been modified until after Plaintiff had completely performed all of its obligations under the May 25, 1995 agreement. Although the facts are as Plaintiff states, the court disagrees that this necessarily establishes that Defendants had no intention of performing at the time Deuschle sent the letter offer to Plaintiff.

■ At trial, Deuschle all but conceded that he was jealous of the relationship that Gruber and Hail had with Lambert. Specifically, Deuschle stated, "I was disappointed that there wasn't—that I wasn't included in it." More importantly, Deuschle admitted, only after being repeatedly questioned by Plaintiff's counsel, that it was not until late in 1999 or until the case had almost he first told Lambert that he did not believe Gruber and Hail were entitled to a fee. When viewed in the context of this testimony, Deuschle's refusal to pay Plaintiff for its services appears to be more of an afterthought based on disappointment rather than a well thought out fraudulent scheme to defraud Plaintiff or induce it into entering the agreement. Similarly, the haphazard method in which the Fee Agreement was modified shortly after Deuschle sent the letter offer to Gruber appears to be the product of bad lawyering and Deuschle's attempt to appease Lambert and the Union more than anything else. The court therefore finds that Defendants' representations were not made with the intent to deceive Plaintiff and that its subsequent failure to perform under the May 25, 1995 agreement was a breach of the parties' agreement and no more. Plaintiff has therefore failed to establish a claim for fraud.[13]

## D. Tortious Interference with Existing Contract

■ The elements of tortious interference with a contract are: (1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex.2000). Plaintiff contends that:

---

**13.** For the record, the court notes that it was not Plaintiff's intent to seek damages for both its contract and tort claims. In its proposed factual findings related to Defendants' double recovery defense, Plaintiff asserted that it was not seeking a separate award of damages for its fraud claim and its breach of contract claim. *See* Plaintiff's Proposed Findings of Fact and Conclusions of Law ¶ 54.

(1) Godwin Gruber had a valid contract with Deuschles & Associates; (2) that Brian C. Deuschle, Chartered willfully and intentionally interfered with the contract by depositing the $1,750,000 into its trust fund account and refusing to allow Godwin Gruber access to its share of the settlement and by agreeing to reduce the contingency fee from 40% to a flat $425,000; and (3) that Plaintiff was injured as a result and suffered an actual loss in the amount of $233,333.33.

Defendants argue that Plaintiff's claim fails as a matter of law because a party to a business relation cannot tortiously interfere with himself. The court assumes that by this Defendants contend that Brian C. Deuschle, Chartered and Deuschle & Associates are one and the same. Defendants also argue that Brian C. Deuschle, Chartered could not have interfered as Plaintiff alleges, because the entity was not formed until February 2, 1998 or well after the alleged interference with the May 25, 1995 contract took place. Having already determined that Defendants were free to modify the Fee Agreement but that these modifications did not alter its agreement with Plaintiff, the court need not address the parties' specific contentions, because the court's previous conclusion negates the second element of tortious interference with a contract, that is, the requirement that Defendant willfully and intentionally interfered with the contract. The court therefore concludes that Plaintiff cannot establish all of the elements for tortious interference with a contract, and its claim for tortious interference fails.

### E. Conspiracy

Plaintiff maintains that Defendants acted together to deprive it of the $233,333.33 owed; that Defendants had a meeting of the minds on the course of action to accomplish this object; that Defendants committed the unlawful, overt act of breaching their agreements with Plaintiff and defrauding Plaintiff; and that Plaintiff's loss of $233,333.33 was proximately caused as a result. Defendants contend that there is no evidence they conspired to defraud Plaintiff. The court agrees.

■ "Civil conspiracy, generally defined as a combination of two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means," is often referred to as a "derivative tort," because a defendant's liability for conspiracy depends on its participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants responsible. *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996); *Operation Rescue–Nat'l v. Planned Parenthood*, 975 S.W.2d 546, 553 (Tex. 1998). Therefore, to prevail on a civil conspiracy claim, the plaintiff must show that the defendant was liable for some underlying tort. *Trammell Crow Co. No. 60 v. Harkinson*, 944 S.W.2d 631, 635 (Tex. 1997). In the present case, the court has already determined that Plaintiff cannot prevail on its fraud claims. Accordingly, the court concludes that Plaintiff's conspiracy claims as they relate to fraud also fail. *See Tilton*, 925 S.W.2d at 681.

### F. Constructive Trust

■ Plaintiff requests that the court impose an equitable trust upon the proceeds of the settlement funds, because Brian C. Deuschle, Chartered committed an unconscionable act in retaining the $233,333.33 owed Plaintiff and was unjustly enriched as a result. There are two circumstances under which a constructive trust may be imposed in Texas: (1) breach of an informal relationship of special trust or confidence arising prior to the transaction in question, or (2) actual fraud. *In re Monnig's Dept. Stores, Inc.*, 929 F.2d 197, 201 (5th Cir.1991); *Meadows v. Biersch–*

*wale,* 516 S.W.2d 125, 128–130 (Tex.1974) (constructive trust can arise out of actual fraud, not just confidential or fiduciary relationship). Here, there is no evidence of actual fraud or a special relationship of trust between Plaintiff and Defendants. The court therefore determines that imposition of a constructive trust under these circumstance is not warranted.

## IV. *Attorney's Fees*

Plaintiff seeks attorney's fees pursuant to § 38.001 of the Tex. Civ. Rem. & Prac. Code. As the prevailing party on its breach of contract claim, Plaintiff is entitled to reasonable and necessary attorney's fees under § 38.001. *Grapevine Excavation, Inc. v. Maryland Lloyds,* 35 S.W.3d 1, 5 (Tex.2000). Plaintiff has a responsibility to segregate fees unless prosecution of these claims entails proof of essentially the same facts. *Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 11 (Tex.1991). In other words, Plaintiff must establish that its various claims are so intertwined to the point of being inseparable. *Id.*

Any application for attorney's fees will be handled pursuant to Fed.R.Civ.P. 54(d)(2). Accordingly, Plaintiff must submit its application within 14 days of this opinion and order, along with any affidavit or other documentation it wishes the court to consider. Any response or reply must be filed in accordance with the Local Rules.

## V. *Conclusion*

For the reasons stated, the court concludes that Plaintiff has proved all of the elements of its breach of contract claim and is entitled to $233,333.33 in damages. The court, however, concludes that Plaintiff has not established the necessary elements of its remaining claims for fraud, tortious interference with a contract, conspiracy, quantum meruit, and imposition of a constructive trust. Accordingly, the court finds in favor of Defendants on these claims. Judgment will issue by separate document as required by Fed.R.Civ.P. 58.